**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                         )
SEA SHEPHERD CONSERVATION        )
SOCIETY,                                               )
                                                         )
                    Plaintiff,                          )
                                                         )
          v.                                             )          Civil Action No. 13-1422 (ABJ)
                                                         )
INTERNAL REVENUE SERVICE,           )
                                                         )
                    Defendant.                         )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff Sea Shepherd Conservation Society made a Freedom of Information Act ("FOIA")

request to the Internal Revenue Service ("IRS"), seeking all records related to itself in IRS files

dated from January 1, 2006 to May 13, 2013.  In particular, plaintiff requested records related to

any complaints lodged with the IRS about Sea Shepherd, and the examination of Sea Shepherd's

tax-exempt status that began in January of 2013.  In this lawsuit, plaintiff contends that the IRS

failed to conduct an adequate search for responsive records, and that it has withheld or redacted

records without justification.  Defendant filed a motion for summary judgment on May 20, 2014.

The Court finds that defendant has failed to establish that it conducted an adequate search

for records under FOIA, and that it has not demonstrated on this record that most of its

withholdings were justified.  Therefore, the Court will remand this case and direct the agency to

conduct additional searches, provide more detailed descriptions of its searches and more detailed

justifications for its withholdings, and release any non-exempt portions of responsive records to

plaintiff.

# BACKGROUND

## I.     Sea Shepherd Conservation Society

Sea Shepherd is a 501(c)(3) non-profit environmental organization dedicated to the preservation of oceanic habitats and wildlife, including whales. Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. for Summ. J. at 2 [Dkt. # 17] ("Pl.'s Opp.") at 2.  Since 2003, plaintiff has "engaged in numerous direct confrontation campaigns" against the Institute of Cetacean Research ("Cetacean"), which plaintiff describes as an organization that hunts whales in the Southern Ocean for commercial purposes in violation of international law.  *Id.*  Plaintiff claims that Cetacean is funded, in part, by the Japanese government.  *Id.*

Sea Shepherd maintains that, in response to its campaigns against Cetacean, the Japanese government and Cetacean have targeted Sea Shepherd diplomatically and through litigation in the United States.  *See id.* at 4–5.  Some of this litigation has been successful.  *See Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940, 944, 947 (9th Cir. 2013) (declaring that Sea Shepherd's acts amounted to piracy and granting preliminary injunction).  Other matters remain pending.[1]  On the diplomatic side, and as background for the instant litigation, plaintiff points to two classified cables, authored by United States government officials and published in January 2011 by the online organization Wikileaks, that reflect conversations between the United States and Japanese governments about Sea Shepherd's activities and tax-exempt status.  *See* Ex. 1 to Rule 56(d) Decl. of Christopher Rizek [Dkt. # 17-3] at 1–2 (stating that General Machida of Japan "appreciates the [U.S. government] initiative to address [Sea Shepherd's] tax exempt

---

1      *See Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, No. C11-2043JLR, 2014 WL 3579639, at *1 (W.D. Wash. July 21, 2014) ("Cetacean alleges that Sea Shepherd's tactics include ramming Cetacean's ships, dragging ropes in the water to disable propellers, and directing smoke bombs, flares, butyric acid-filled containers, and lasers at Cetacean's ships.").

status," and that U.S. official Monica Medina "believes the [U.S. government] can demonstrate the group does not deserve tax exempt status based on their aggressive and harmful actions"); Ex. 2 to Rule 56(d) Decl. of Christopher Rizek [Dkt. # 17-3] at 2 (stating that General Yamashita of Japan "said [Sea Shepherd's] actions have kept the fleet from reaching its [whaling] quota the last few years" and that the government of Japan "would come under pressure domestically if [Sea Shepherd] harassment continues to keep Japanese whalers from filling their quota," and noting that U.S. official Marc Wall "said the [U.S. government] is concerned about the safety of life at sea and is looking at the activity of [Sea Shepherd]").

In January 2013, Sea Shepherd became the subject of an IRS examination into its tax-exempt status for the year 2010. *See* Def.'s Statement of Undisputed Material Facts [Dkt. # 16-1] ("Def.'s SOF") ¶ 1; Pl.'s Statement of Genuine Issues in Opp. to Def.'s SOF [Dkt. # 17-2] ¶ 1.  On October 29, 2014, the IRS notified Sea Shepherd by letter that its 2010 return would be accepted and that the investigation was closed.  Attach. 1 to Pl.'s Notice of Change in Facts [Dkt. # 22-1] at 1.  In addition, the IRS informed plaintiff in an addendum to its letter that, "[s]hould the courts with its [sic] authority find the Sea Shepherd in violation of laws, a subsequent examination may be initiated." *Id.* at 4.

## II.    Plaintiff's FOIA Request

Plaintiff contends that, "[b]ased on revelations in the media, Sea Shepherd's past experiences with very public attempts by both [Cetacean] and the Japanese government to shut down the organization, and the timing and nature of the audit, Sea Shepherd has reason to believe that the IRS started the audit in response to a request of the Japanese government or [Cetacean]." Pl.'s Opp. at 5.  These suspicions led plaintiff to file a FOIA request with the IRS on May 13, 2013, seeking "any and all documents, from January 1, 2006, through [May 13, 2013], related to

Sea Shepherd," including documents related to "the examination of Sea Shepherd commenced by the Internal Revenue Service on or about January 4, 2013," and any "complaint lodged with the Internal Revenue Service expressing concerns regarding Sea Shepherd's activities or qualification for tax-exempt status after January 1, 2006." Ex. A to Compl. [Dkt. # 1] at 1.  Plaintiff also sought "any and all documents related to any request from any person that the Internal Revenue Service examine Sea Shepherd and any and all documents that relate to the examination of Sea Shepherd." *Id.* at 1–2.

Plaintiff specifically requested that the IRS search the following locations:  the files of the agent who handled the examination of plaintiff's tax-exempt status, Peter Huang; the National and Area Chief Counsel Offices of the Tax-Exempt and Government Entities ("TEGE") function of the IRS; the office of the Director of the Exempt Organizations Exams in Dallas, Texas; and the office of Exempt Organizations Rulings and Agreements in the TEGE National Office.  *Id.* at 1.

## III.  Procedural History

On June 17, 2013, the IRS informed plaintiff that it would not be able to respond within the twenty-day statutory period, and it extended its response date to August 2, 2013.  Compl. [Dkt. # 1] ¶ 6; *see also* 5 U.S.C. § 552(a)(6)(A)(ii).  After the IRS missed this deadline, plaintiff filed a complaint in this Court on September 19, 2013.  *See* Compl. ¶¶ 7–9.  On January 30, 2014, defendant produced over 3000 pages of records to plaintiff, and moved for an extension until March 7, 2014, to complete its response.  Def.'s Mot. Proposing Production Schedule [Dkt. # 8]. The Court granted defendant's motion for an extension of the production schedule.  Minute Order (Jan. 31, 2014).

On March 7, 2014, defendant produced a second set of documents to plaintiff, which it described as its "final release."  Def.'s Status Report (Mar. 7, 2014) [Dkt. # 10].  On March 21,

2014, however, defendant filed another status report in which it stated that it had discovered on March 19, 2014, that its initial search was incomplete, and that it was taking steps "to expeditiously complete its search and production of IRS counsel records."  Def.'s Status Report (Mar. 21, 2014) [Dkt. # 12] at 1; *see also* Decl. of A.M. Gulas [Dkt. # 12-1] ("1st Gulas Decl.") ¶ 6.

On May 20, 2014, the IRS filed a motion for summary judgment.  Def.'s Mot. for Summ. J. [Dkt. # 16] ("Def.'s Mot."); Mem. in Supp. of Def.'s Mot. [Dkt. # 16] ("Def.'s Mem.").  Among the arguments advanced by the agency was the contention that documents should be withheld because the audit of plaintiff's tax-exempt status was ongoing.  *See* Def.'s Mem. at 12.  Plaintiff filed an opposition on July 18, 2014.  Pl.'s Opp.  Defendant replied on August 8, 2014, Def.'s Reply Mem. in Supp. of Def.'s Mot. [Dkt. # 19] ("Def.'s Reply"), and filed an additional declaration by Kieu Ta, which corrected an exhibit filed with the motion for summary judgment. *See* Decl. of Kieu Ta, Attach. 1 to Def.'s Errata [Dkt. # 18-1] ("Ta Decl.").  In light of the supplemental declaration, plaintiff was granted leave to file a sur-reply on August 25, 2014. Minute Order (Aug. 25, 2014); *see also* Pl.'s Sur-reply to Def.'s Reply [Dkt. # 21].

On November 5, 2014, plaintiff notified the Court that the IRS had concluded its investigation without consequence for plaintiff, and it took the position that this event vitiated defendant's reliance on FOIA Exemptions 7(A) and 7(D) to withhold records.  Pl.'s Notice of Change in Facts [Dkt. # 22] ("Pl.'s Notice") at 1–2.  The Court ordered the IRS to state whether it wished "to continue to stand on its previous withholdings and explanations," or "to withdraw and resubmit its motion for summary judgment."  Minute Order (Nov. 5, 2014).  On November 12, 2014, the IRS notified the Court that it would stand on its previous pleadings.  Def.'s Notice in Resp. [Dkt. # 24] ("Def.'s Resp.") ¶¶ 1–4.

On March 3, 2015, the Court ordered defendant to deliver a series of records to the Court

for its *in camera* review:  redacted and unredacted versions of the pages 003708 and 003715 in the

*Vaughn* Index for IRS Examination Records [Dkt. # 16-3] ("Examination *Vaughn* Index"), and

pages 012398, 012400–012401, 012404, 012467, 012533–012534, 012569–012571, 012208–

012210, and 012215–012216 in the *Vaughn* Index for IRS Counsel Records [Dkt. # 16-5]

("Counsel *Vaughn* Index").  Minute Order (Mar. 3, 2015), citing *Ray v. Turner*, 587 F.2d 1187,

1195 (D.C. Cir. 1978).  Defendant complied with this order, *see* Pl.'s Notice of Compliance [Dkt.

# 26], and the Court has reviewed the records in connection with its consideration of defendant's

motion for summary judgment.

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden

is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*,

656 F.2d 724, 738 (D.C. Cir. 1981).  "FOIA cases are typically and appropriately decided on

motions for summary judgment."  *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

On a motion for summary judgment, the Court "must view the evidence in the light most

favorable to the nonmoving party, draw all reasonable inferences in [its] favor, and eschew making

credibility determinations or weighing the evidence."  *Montgomery v. Chao*, 546 F.3d 703, 706

(D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  But

where a plaintiff has neither alleged nor provided evidence that an agency acted in bad faith, "a

court may award summary judgment solely on the basis of information provided by the agency in

declarations."  *Moore*, 601 F. Supp. 2d at 12.

**ANALYSIS**

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). But because "legitimate governmental and private interests could be harmed by [the] release of certain types of information," Congress provided nine specific exemptions to the disclosure requirements. *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). These nine FOIA exemptions are to be construed narrowly. *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must, first, demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). Any "reasonably segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), unless the nonexempt portions are "'inextricably intertwined with exempt portions.'" *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004), quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

## I.     Defendant's declarations do not describe an adequate search for responsive records.

### A.  Legal Standard

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby*, 920 F.2d at 68; *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The Court finds that the IRS did not meet this burden, and will remand the case to defendant to continue its search and amend its declarations.

To demonstrate that it has performed an adequate search for documents responsive to a FOIA request, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby*, 920 F.2d at 68 (finding summary judgment improper where agency's affidavit lacked sufficient detail); *see also Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009) (same).  A declaration is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched."  *Oglesby*, 920 F.2d at 68; *see also Defenders*, 623 F. Supp. 2d at 92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used).  A declaration, therefore, must at least include the agency's "rationale for searching certain locations and not others."  *Defenders*, 623 F. Supp. 2d at 92; *see also Nat'l Sec. Counselors v. CIA*, 849 F. Supp. 2d 6, 11 (D.D.C. 2012) (finding affidavit sufficient where it "outline[d] with reasonable detail the CIA's decision to limit the search" to a particular area); *Hooker v. U.S. Dep't of Health & Human Servs.*, 887 F. Supp. 2d 40, 51 (D.D.C. 2012) (finding that the agency's declaration "fail[ed] to explain . . . why those offices were the reasonably likely locations of the records sought").  Agency affidavits attesting to a reasonable search "are

afforded a presumption of good faith" that "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), quoting *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).

An agency's declarations "need not 'set forth with meticulous documentation the details of an epic search for requested records,'" *Defenders*, 623 F. Supp. 2d at 91, quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), but they should "'describe what records were searched, by whom, and through what processes.'" *Id.*, quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994). Conclusory assertions about the agency's thoroughness are not sufficient. *See Morley v. CIA*, 508 F.3d 1108, 1121–22 (D.C. Cir. 2007) (finding agency's "single conclusory affidavit" to be inadequate). At the same time, however, where an "affidavit could in theory be more detailed, that fact alone does not warrant denying summary judgment in favor of" a defendant. *White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012).

### B. Defendant's Searches and Declarations

Plaintiff's FOIA request sought three types of records: (1) records related to the IRS's audit of Sea Shepherd; (2) records related to "any complaint lodged with the [IRS] expressing concerns regarding Sea Shepherd's activities or qualification for tax-exempt status" between January 1, 2006, and May 13, 2013; and (3) "any and all documents, from January 1, 2006, through [May 13, 2013], related to" plaintiff. Ex. A to Compl. at 1. In addition, plaintiff's request identified several offices and one agent, in various branches of the IRS, that it believed might possess responsive files: the office of the Director of Exempt Organizations Examinations in Dallas, Texas; Peter Huang, the agent assigned to the examination of Sea Shepherd; the offices of the National and Area Tax Exempt and Government Entities ("TEGE") Counsel; and the Rulings and Agreements division of the office of Exempt Organizations. *Id.*

To demonstrate the adequacy of its search efforts, the IRS submitted four declarations:[2]

- The declaration of Denise Higley, a Tax Law Specialist in the IRS's Headquarters Disclosure Office's FOIA function, describes the agency's initial search efforts after receiving plaintiff's FOIA request, including Higley's coordination with (1) Kieu Ta, the FOIA coordinator for the office of Exempt Organizations Examinations, (2) the National Office of Chief Counsel, and (3) revenue agent Peter Huang.  *See* Decl. of Denise Higley [Dkt. # 16-6] ("Higley Decl.").

- The declaration of Kieu Ta, a Senior Program Analyst in the IRS's office for Tax Exempt and Government Entities, describes her coordination with agent Huang and the Exempt Organizations Referral group.  *See* Ta Decl.

- Two declarations from A.M. Gulas, Senior Counsel in Branch 7 of the Office of the Associate Chief Counsel (Procedure and Administration), describe Gulas's coordination with Denise Higley, Peter Huang, Mark Weiner in the Pacific Coast Area Chief Counsel Office, Courtney Jones in the National Office of Chief Counsel, and Elizabeth Goff in the office of Exempt Organizations Rulings and Agreements.  *See* 1st Gulas Decl.; Second Decl. of A.M. Gulas [Dkt. # 16-4] ("2d Gulas Decl.").

As will be set out in more detail below, the Court concludes that defendant's declarations are deficient on several grounds.  First, none of the declarations adequately addresses plaintiff's request for "any and all documents" related to it within the designated time period, or even indicates that a search for "any and all documents" related to plaintiff was actually conducted. Second, none of the declarations describes defendant's overall "rationale for searching certain locations and not others."  *See Defenders*, 623 F. Supp. 2d at 92; *see also Nat'l Sec. Counselors*, 849 F. Supp. 2d at 11.  And, third, the individual declarations suffer from numerous other deficiencies that are described below.  Thus, the Court cannot conclude that the agency has

---

2    Defendant also submitted a fifth declaration by Michael Franklin, an attorney in Branch 6 of the Office of the Associate Chief Counsel (Procedure and Administration), in support of its withholdings under various FOIA exemptions.  Decl. of Michael Franklin [Dkt. # 16-2].

described a search that was "reasonably calculated to uncover all relevant documents," *see Valencia-Lucena*, 180 F.3d at 325, and it will remand the case to defendant on this basis.[3]

     1.  <u>The Higley and Ta declarations do not describe an adequate search of the Exempt Organizations Examinations function.</u>

Plaintiff's FOIA request asked defendant to search for records in the office of the "Director of Exempt Organizations Exam[inations]." Ex. A to Compl. at 1. The Court finds that defendant has failed to describe an adequate search of the Exempt Organizations Examinations function.

Denise Higley was assigned to process and coordinate plaintiff's FOIA request, and she began her search on May 20, 2013, by contacting Peter Huang, the agent assigned to the examination of Sea Shepherd's tax-exempt status, as plaintiff specified in its FOIA request. Higley Decl. ¶¶ 1–3; *see also* Ex. A to Compl. at 1. Agent Huang informed Higley that he had "approximately 3,000" pages of material "related to an open examination for 2010." Higley Decl. ¶ 3.

On June 19, 2013, Higley broadened her search by sending a search request memorandum to Kieu Ta, requesting a copy of the open examination file "and any records other than those in [Huang's] possession." *Id*. ¶¶ 5–6. On June 20, 2014, after receiving the formal search request from Higley, Ta reached out to agent Huang to coordinate a response. Ta Decl. ¶ 4. Ta states that agent Huang conducted a "thorough search in his area to ensure all responsive documents were

---

3    Plaintiff disputes the adequacy of the scope of IRS's search on the additional ground that the agency's declarations do not reflect a search of either the Whistleblower Office or the Communications and Liaison Office. *See* Pl.'s Opp. at 9. Because the Court is remanding this case to the IRS on other grounds, it need not rule on this issue at this time. The Court notes, however, that plaintiff did not mention either of these offices in its FOIA request, and that the IRS was "not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *See Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

gathered for this FOIA request, including records he received from Walt Waldram, the initial examining agent before the examination was transferred to [agent] Huang." *Id.* ¶ 6.

With respect to Higley's request to search for records "other than those in [Huang's] possession," Higley Decl. ¶ 5, Ta states that "because the examination was initiated from several referrals from confidential sources, and to ensure a thorough search was conducted, [she] checked with the [Exempt Organizations] Referral group to gather any responsive documents that Mr. Huang did not have." Ta Decl. ¶ 5. Ta then explains that "[t]he [Exempt Organizations] Referral group confirmed that all referrals had been sent to the exam group." *Id.*

Between July 1, 2013, and July 18, 2013, Higley received both electronic and paper copies of documents "relating to the pending examination" from Huang and Ta. Higley Decl. ¶ 7. And according to Higley, "[t]hese . . . records were all the records [E]xamination had."[4] *Id.*

The Court finds that the Higley and Ta declarations fail to describe an adequate search for records in the Exempt Organizations Examinations function. First, neither declarant meets the basic requirement of "averring that all files likely to contain responsive materials . . . were searched." *Oglesby*, 920 F.2d at 68. Ta simply states – without further description – that agent Huang "conducted a thorough search in his area," and describes her own search of the Exempt Organization Referral group, Ta Decl. ¶¶ 5–6, without explaining why these were the only locations she elected to search and without stating that "no other record system was likely to produce responsive documents." *See Oglesby*, 920 F.2d at 68. Moreover, Ta fails to describe any other details of her search, such as the relevant file systems or search terms that she may have employed. *See White*, 840 F. Supp. 2d at 89. And, in light of these deficiencies, Higley's

---

4       Several months later, on or around March 20, 2014, Senior Counsel A.M. Gulas also contacted Huang, who then produced "one additional responsive e-mail." 2d Gulas Decl. ¶ 8.

conclusory statement that the records she received from Ta "were all the records [E]xamination had," is not entitled to credence.  *See* Higley Decl. ¶ 7; *see also Morley*, 508 F.3d at 1121–22. Finally, both Higley and Ta fail to indicate that a search was conducted for the broader category of records requested by plaintiff – and not solely records related to the audit of plaintiff.  The Court finds, therefore, that the Ta declaration and the relevant portions of the Higley declaration do not describe an adequate search of the Exempt Organizations Examinations function.

> 2. The Higley and Gulas declarations do not describe an adequate search of the National and Area Chief Counsel Offices of the Tax-Exempt and Government Entities function.

Plaintiff also requested that the IRS search for records in the "National and Area Chief Counsel Offices of the Tax-Exempt and Government Entities," or TEGE, function.  Ex. A to Compl. at 1.  So, Higley sent a search memorandum on June 21, 2013, to Melva Tyler, Supervisory Legal Administrative Specialist in the Legal Processing Division for the Office of the Associate Chief Counsel (Procedure and Administration) in Washington, D.C.  Higley Decl. ¶ 6.  According to Higley, "Tyler is the chief of the branch . . . responsible for coordinating searches for Counsel records within National Office Chief Counsel offices."  *Id.*  Higley's declaration, however, provides no indication that Tyler or anyone else in the National TEGE Counsel Office ever responded to the request to search for responsive records, nor does the declaration indicate that Higley contacted anyone in the Area Chief Counsel offices of TEGE.  *See id.*

On March 19, 2014, while this case was already pending, Senior Counsel A.M. Gulas discovered these omissions from the Higley declaration.  1st Gulas Decl. ¶¶ 6, 8.  Gulas attempted to cure this deficiency by reaching out to the Disclosure and Litigation Support Branch, which she explains is the office that processes FOIA requests for National Office of Counsel records, in order to "learn if they had ever received any records from TEGE Counsel."  *Id.* ¶¶ 7–8.  On March 20,

2014, she received a copy of the one file the office had identified as responsive from TEGE Counsel attorney Courtney Jones.  *Id.* ¶ 8.  Gulas asked Jones whether any other responsive records might be found in the National TEGE Counsel office, and Jones responded that there were none. 2d Gulas Decl. ¶ 2.  Gulas "corroborated" Jones's statement by "reviewing the Counsel case time reporting database, which indicated [Jones] had billed only five hours to the [Sea Shepherd] case." *Id*.

As for Area TEGE Counsel, Gulas contacted Mark Weiner, a senior counsel in the Pacific Coast Area TEGE Counsel office, who provided legal assistance to Peter Huang, the agent assigned to plaintiff's case at the IRS.   1st Gulas Decl. ¶ 10.  Weiner stated that the only records in his possession were those that agent Huang had already produced, and Gulas confirmed this to be true based on descriptions provided by Weiner.  2d Gulas Decl. ¶ 4.  Gulas also asked Weiner to provide her with any emails he had exchanged with revenue agents related to this case, and Weiner forwarded to her his emails with Huang and with Walt Waldram, the agent initially assigned to the examination of plaintiff.  *Id.* ¶¶ 5–7.

As IRS Senior Counsel Gulas acknowledged, the original Higley declaration failed to describe an adequate search for responsive records in either the National or Area TEGE Counsel offices.  *See* 1st Gulas Decl. ¶¶ 6, 8.  Moreover, despite Gulas's efforts to cure the deficiencies of the Higley declaration, Gulas's declarations do not sufficiently indicate that defendant conducted a search for records responsive to all portions of plaintiff's request.  Moreover, Gulas fails to explain the rationale for only contacting Weiner in the Pacific Coast Area TEGE Counsel office, and no other individuals or offices, with respect to plaintiff's full request.  *See Defenders*, 623 F. Supp. 2d at 92; *Nat'l Sec. Counselors*, 849 F. Supp. 2d at 11.  Thus, the search for records in the National and Area TEGE Counsel offices was inadequate.

3.  The Second Gulas declaration does not adequately describe the search of the Exempt Organizations Rulings and Agreements function.

Although plaintiff's FOIA request specifies that plaintiff believed that responsive records might be found in the Exempt Organizations Rulings and Agreements function of the national TEGE office, *see* Ex. A to Compl. at 1, the Higley declaration does not indicate that she coordinated any search in that location.  *See* Higley Decl.  Thus, "[t]o confirm that the IRS had searched all offices that plaintiff's counsel specifically identified in the initial request," Gulas contacted Elizabeth Goff, FOIA Coordinator for Exempt Organizations in the National Office, and requested that she conduct a search for responsive records in the Rulings and Agreements function. 2d Gulas Decl. ¶ 11.  Goff responded that "Rulings and Agreements would have no files while an examination is pending in the field."  *Id.*

But even if Goff's assertion might be sufficient to explain why Rulings and Agreements did not possess records responsive to the portion of plaintiff's FOIA request that sought records related to the then-ongoing examination of its tax-exempt status, it does not address the portion of plaintiff's request that sought "any and all" records related to Sea Shepherd within the specified timeframe, *see* Ex. A to Compl. at 1, nor does it indicate that all "reasonably likely locations" of responsive records were searched.  *See Hooker*, 887 F. Supp. 2d at 51.  Accordingly, the Court cannot conclude that this aspect of the search was sufficient.

4.  The Court will remand the case to defendant.

For all of these reasons, then, the Court finds that defendant's affidavits do not attest to a search that was "reasonably calculated to uncover all relevant documents" with respect to plaintiff's FOIA request.  *See Valencia-Lucena*, 180 F.3d at 325.  Therefore, the Court will remand this case to the IRS so that it may conduct additional searches and provide more detailed declarations consistent with this opinion.

15

**II.      Defendant has not justified its withholdings under FOIA Exemptions 6 and 7.**

Turning to those records that the IRS did identify, the agency declined to produce numerous responsive documents under FOIA Exemptions 6 and 7.  The Court finds that these withholdings have not been justified on this record.

Exemption 6 shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In this case, the IRS acknowledges that "the information at issue here is not in a personal or medical file," but contends that it was found "in a 'similar file[].'"  Def.'s Mem. at 18 (alteration in original).

Exemption 7 permits agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" would undermine one of six enumerated interests.  5 U.S.C. § 552(b)(7)(A)–(F).

As a threshold matter, the IRS contends that all of the records it withheld under Exemption 7 were compiled for a law enforcement purpose because there is "a nexus 'between [the IRS's] activity . . . and its law enforcement duties.'"  Def.'s Mem. at 12, quoting *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987).  Plaintiff contends that defendant has not made this showing because the descriptions of the records it found are insufficiently detailed, and because plaintiff suspects that the IRS's audit may have been motivated by a non-law enforcement purpose.  Pl.'s Opp. at 18.  Although defendant has said little to address these objections, the Court need not rule on that issue at this time because it finds that defendant's withholdings under Exemption 7 were unsupported on other grounds.  In addition, and for the same reason, the Court need not determine at this time whether any of the records defendant withheld under Exemption 6 were found in "similar files," as defendant contends.  *See* Def.'s Mem. at 18.

**A.   *Defendant has not justified its withholdings under Exemption 7(A).***

FOIA Exemption 7(A) permits agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). At the time it filed its dispositive motion, defendant argued that "Exemption 7(A) applies to the Service's examination records for Sea Shepherd Conservation Society, because the Service's examination of the Sea Shepherd's tax exempt status is ongoing." Def.'s Mem. at 12, citing Decl. of Michael Franklin [Dkt. # 16-2] ("Franklin Decl.") ¶ 5. It also contended that the disclosure of the information could "hamper the Service's progress in the examination by revealing the scope, progress and direction of the investigation." *Id.* at 13, citing Franklin Decl. ¶ 33; *see also* Examination *Vaughn* Index at 1–13; Counsel *Vaughn* Index at 1–3, 5–13. The agency has not revised its position. *See* Def.'s Resp.

But whether or not the records at issue here qualify as "law enforcement records," the IRS's statement that the release of the records "could reasonably be expected to interfere with enforcement proceedings," *see* 5 U.S.C. § 552(b)(7)(A), is no longer sufficient to justify their retention because the investigation of plaintiff has now closed. *See* Pl.'s Notice. On November 5, 2014, plaintiff notified the Court that, on October 29, 2014, it received a letter from the IRS stating that the audit had ended and that "[plaintiff's] organization continues to qualify for exemption from Federal income tax." Attach. 1 to Pl.'s Notice at 1.

In light of plaintiff's notice, the Court ordered defendant to explain whether it wished "to stand on its previous withholdings and explanations," or "to withdraw and resubmit its motion for summary judgment." Minute Order (Nov. 5, 2014). On November 12, 2014, defendant responded that it "continue[d] to stand on its previous withholdings and explanations," and that it would not

withdraw and resubmit its motion.  Def.'s Resp. ¶ 4.  In addition, defendant pointed out that its October 29, 2014 letter to plaintiff had included an addendum in which it cautioned plaintiff that, "[s]hould the courts . . . find the Sea Shepherd in violation of laws, a subsequent examination may be initiated."  *Id.* ¶ 1.  Defendant took the position that this addendum "demonstrates that its investigation of Plaintiff is not conclusively closed and therefore Exemption 7(A) continues to apply."  *Id.* ¶ 2.

But the IRS has not provided any authority for the proposition that the possibility that another investigation might be launched in the future is sufficient to give rise to the risk that disclosure of records of the previous investigation would "interfere with enforcement proceedings," which is the necessary predicate for the cited exemption.  Indeed, the only basis on which the IRS invoked Exemption 7(A) was the fact that its investigation was "ongoing."  *See* Def.'s Mem. at 12.  Therefore, the Court finds that defendant has not carried its burden to show that Exemption 7(A) applies to any of the withholdings it has made in this case.

### B.  *Defendant has not justified its withholdings under Exemptions 6 or 7(C).*

Defendant has also invoked FOIA Exemptions 6 and 7(C) to withhold third-party identifying information.  Def.'s Mem. at 17; Franklin Decl. ¶¶ 17–19.  Exemption 6 shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) protects information that was:  (1) compiled for law enforcement purposes, if (2) the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).  To determine whether either Exemption 7(C) or 6 applies, a court balances an agency's asserted privacy interest against the public interest in

disclosure of information.  *See DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 758–59 (1989).

Defendant asserts that Exemptions 6 and 7(C) justify its redactions from two types of records.  The first group of records consists of copies of plaintiff's own QuickBooks data, from which defendant has redacted the Social Security numbers and Taxpayer Identification Numbers of third parties.  *See* Examination *Vaughn* Index at 6, 13.[5]  The second group is made up of two "Tax Exempt Organization Referral Packages," and defendant has redacted "[t]he names, telephone numbers, fax numbers, and emails of third parties listed on these referral documents." *Id.* at 6.[6]

Defendant asserts that "[t]he release of this information could reasonably be expected to lead to the identification of certain third parties, which could conceivably subject them to harassment or annoyance in their private lives."  Def.'s Mem. at 20.  Therefore, defendant continues, "[t]he Service determined and the Court should agree that there is little or no public interest in this information."  *Id.*; Def.'s Reply at 10.  But in this case, plaintiff has pointed to the public interest in knowing whether the IRS's audit was in any way related to the statements revealed by the Wikileaks cables, which indicate that United States government officials discussed the IRS's investigation of plaintiff's tax-exempt status with Japanese government officials who were concerned about plaintiff's activities.  Pl.'s Opp. at 26; *see also* Ex. 1 to Rule 56(d) Decl. of

---

5      The specific records at issue are Bates numbered 004069, 004071, 004073, 004075, 004078, 004080, 004083, 008758, 008769, 008791, 008810, 008829, 008842, 008867, 008886, 008889, 008952, 008963, 008985, 009004, 009023, 009036, 009061, 009080, 009083, 009146, 009157, 009179, 009198, 009217, 009230, 009255, 009274, 009277, 010060, 010061, 010063, 010067, 010071, 010074, and 010075.

6      The specific records at issue are Bates numbered 003708 and 003715.  The latter record is also referred to as document number 003664.

Christopher Rizek; Ex. 2 to Rule 56(d) Decl. of Christopher Rizek.  In addition, plaintiff has articulated a public interest in knowing whether the IRS's audit was related to the Cetacean lawsuit. Pl.'s Opp. at 26.

Whether or not these records meet the threshold requirements of Exemptions 6 and 7, and whether or not the private interests asserted by defendant outweigh the public interest identified by plaintiff, the Court finds that plaintiff has pointed to a public interest in disclosure that the IRS did not consider in the balancing test.  Accordingly, the Court will remand the case to the IRS so that it may weigh the privacy interest in non-disclosure against the public interest in the release of the records.  *See Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 96 (D.D.C. 2009) ("[A]n agency must, for each record, conduct a particularized assessment of the public and private interests at stake.").

### C. Defendant has not justified its withholdings under Exemption 7(D).

The IRS has also failed to justify its reliance on Exemption 7(D).  This provision permits agencies to withhold "records or information compiled for law enforcement purposes" to the extent that the records or information "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private

institution which furnished information on a confidential basis."[7]  5 U.S.C. § 552(b)(7)(D).  The

agency invoking Exemption 7(D) bears the burden of "showing that the source is a confidential

one."  *Citizens for Responsibility & Ethics in Washington v. DOJ (CREW)*, 746 F.3d 1082, 1101

(D.C. Cir. 2014), citing *DOJ v. Landano*, 508 U.S. 165, 172 (1993).  It is not enough for an agency

to simply state that the sources in question provided information "'on a confidential basis.'"  *Id.*,

quoting *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011).   Rather, the agency "must either

'present probative evidence that the source did in fact receive an express grant of confidentiality,'"

*id.*, quoting *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998), or else it must "'point to more

narrowly defined circumstances that . . . support the inference of confidentiality.'"  *Id.*, quoting

*Roth*, 642 F.3d at 1184.  The key question "is not whether the requested document is of the type

that the agency usually treats as confidential, but whether the particular source spoke with an

understanding that the communication would remain confidential."  *Landano*, 508 U.S. at 172.

    In this case, the IRS has entirely failed to carry its burden to show that its sources "did in

fact receive an express grant of confidentiality," and it has also failed to articulate circumstances

that would "support the inference of confidentiality."  *See CREW*, 746 F.3d at 1101 (citations and

internal quotation marks omitted).   Defendant merely states that "the confidential sources[]

---

7        In full, Exemption 7(D) states that agencies may withhold

> records or information compiled for law enforcement purposes, but only to
> the extent that the production of such law enforcement records or
> information . . . (D) could reasonably be expected to disclose the identity of
> a confidential source, including a State, local, or foreign agency or authority
> or any private institution which furnished information on a confidential
> basis, and, in the case of a record or information compiled by criminal law
> enforcement authority in the course of a criminal investigation or by an
> agency conducting a lawful national security intelligence investigation,
> information furnished by a confidential source[.]

5 U.S.C. § 552(b)(7).

requested anonymity," without anything more.  Franklin Decl. ¶ 38; *see also* 2d Gulas Decl. ¶ 24

("the confidential source . . . requested anonymity").   Indeed, the IRS does not even claim that

these sources received an assurance of confidentiality at all, *see CREW*, 746 F.3d at 1101 – only

that they "requested" it.  Under these circumstances, the Court cannot find that the IRS has carried

its burden to establish that any of "the particular source[s] spoke with an understanding that the

communication would remain confidential."  *See Landano*, 508 U.S. at 172.  Thus, the IRS has

not justified its withholdings under Exemption 7(D).

**III.    Some of defendant's withholdings are not justified by FOIA Exemption 3 in conjunction with 26 U.S.C. § 6103.**

Defendant withheld several records, in part and in full, under FOIA Exemption 3 in

conjunction with 26 U.S.C. § 6013(a) and 26 U.S.C. § 6103(e)(7).  Def.'s Mem. at 14, 16.  FOIA

Exemption 3 authorizes agencies to withhold information that is "specifically exempted from

disclosure by statute."  5 U.S.C. §§ 552(b)(3)(A)(i), (b)(3)(B).  In this case, defendant has pointed

to two provisions of section 6103 of the Internal Revenue Code as the exempting statutes:   26

U.S.C. § 6103(a), and 26 U.S.C. § 6103(e)(7).  Def.'s Mem. at 14–16.  "That [section] 6103 is the

sort of nondisclosure statute contemplated by FOIA exemption 3 is beyond dispute."  *Tax Analysts

v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997).

**A.    *Some of defendant's withholdings under Exemption 3 and section 6103(a) are not justified.***

Section 6103(a) requires that tax returns and "return information" be kept confidential

subject to certain exceptions.  26 U.S.C. § 6103(a).  "Return information" is defined as

> a taxpayer's identity, the nature, source, or amount of his income, payments,
> receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax
> liability, tax withheld, deficiencies, overassessments, or tax payments,
> whether the taxpayer's return was, is being, or will be examined or subject
> to other investigation or processing, or any other data, received by, recorded
> by, prepared by, furnished to, or collected by the Secretary with respect to

22

> a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . .

*Id.* § 6103(b)(2)(A).

Defendant invokes Exemption 3 and section 6103(a) in connection with its redaction of the "names and contact information of the authors of certain marine shipping notices from the Office of Naval Intelligence" from records found on pages 003708 and 003715 of defendant's production. Pl.'s Opp. at 13; *see also* Examination *Vaughn* Index at 6.[8]   The remainder of each document has been produced in its entirety, but plaintiff challenges the redactions for two reasons:  that the information is otherwise publicly available, and that it does not constitute "return information." *See* Pl.'s Opp. at 13–14.   Plaintiff has provided a link to a website that, according to plaintiff, contains an unredacted version of page 003708.  *See id.* at 13.

The IRS contends that the information it withheld from these two pages is confidential "return information" because it constitutes personally identifying information that is specific to a taxpayer other than plaintiff.[9]   Def.'s Reply at 7–8, citing *Tax Analysts*, 117 F.3d at 618.   The Court has reviewed the two pages *in camera* and finds that, under the circumstances of this case – where the information withheld does not appear to relate to the individual's status as a taxpayer in any way – the IRS has not carried its burden to establish that the redacted information qualifies as

---

8      Defendant also asserted that these redactions were justified under Exemptions 6 and 7(C), *see* Examination *Vaughn* Index at 6, but the Court has already determined that defendant's reliance on those exemptions was unjustified for the reasons stated above.

9      The IRS does not deny that unredacted versions of these two pages are publicly available, although it points out that plaintiff has not actually "produc[ed] the documents 003708 or 003715 in an unredacted form."  *See* Def.'s Reply at 7.   The Court notes, however, that it is the IRS's burden, and not plaintiff's to prove that a FOIA exemption applies.   5 U.S.C. § 552(a)(4)(B); *Military Audit Project*, 656 F.2d at 738.

"return information" under section 6103. Therefore, the Court will remand this issue to the agency so that it may fully address plaintiff's contention that these redactions were not justified and release any reasonably segregable, non-exempt information as required by FOIA. *See* 5 U.S.C. § 552(b); *Wilderness Soc'y*, 344 F. Supp. 2d at 18.

The Court notes, however, that plaintiff has not challenged defendant's redaction of the "[n]ame of [a] 3rd party taxpayer (unrelated to [Sea Shepherd]) . . . to protect confidential return information" on the page Bates numbered 012229. *See* Counsel *Vaughn* Index at 4. The IRS justified this withholding based on Exemption 3 "in conjunction with IRC 6103." *Id.* Therefore, the Court finds that plaintiff has conceded the propriety of this withholding. *See, e.g.*, *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd* 98 F. App'x 8 (D.C. Cir. 2004); *see also Tax Analysts*, 117 F.3d at 610 (treating argument raised by the defendant as conceded where the plaintiff failed to oppose it).

## B. Defendant's withholdings under Exemption 3 and section 6103(e)(7) are not justified.

Section 6013(e)(7) states that "[r]eturn information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines that such disclosure would not seriously impair

Federal tax administration."[10]   26 U.S.C. § 6103(e)(7).   The Court's review of the Secretary's

determination that a disclosure would "seriously impair Federal tax administration" is *de novo*,

"and the IRS bears the burden of proof to justify nondisclosure."   *Casa Investors, Ltd. v. Gibbs*,

No. 88-cv-2485, 1990 WL 180703, at *2 (D.D.C. Oct. 11, 1990), citing *Church of Scientology*,

792 F.2d 146, 150 (D.C. Cir. 1986); *see also* 5 U.S.C. § 552(a)(4)(B).

First, plaintiff objects to defendant's withholding of third-party identifying information

under Exemption 3 and section 6103(e)(7) because, it claims, 26 U.S.C. § 7602(c) and 26 C.F.R.

§ 301.7602-2(3) "compel the Service to disclose the names of third parties contacted in the course

of the Service's investigation of Sea Shepherd."   Pl.'s Opp. at 16.   But plaintiff has brought a

lawsuit under FOIA, not these provisions, and offers no explanation as to why it should be

permitted to raise a new cause of action in its opposition to defendant's motion for summary

judgment.   *See Taylor v. Mills*, 892 F. Supp. 2d 124, 137 (D.D.C. 2012) ("In the main, a plaintiff

is not permitted to raise new claims at the summary judgment stage, where those claims were not

pleaded in the complaint.").

---

10    The Internal Revenue Code provides that "[t]he term 'tax administration' --

   (A) means—

   (i) the administration, management, conduct, direction, and supervision of
   the execution and application of the internal revenue laws or related statutes
   (or equivalent laws and statutes of a State) and tax conventions to which the
   United States is a party, and

   (ii) the development and formulation of Federal tax policy relating to
   existing or proposed internal revenue laws, related statutes, and tax
   conventions, and

   (B) includes assessment, collection, enforcement, litigation, publication,
   and statistical gathering functions under such laws, statutes, or conventions.

26 U.S.C. § 6103(b)(4).

For its part, however, defendant has failed to carry its burden to show that its withholdings under Exemption 3 and section 6103(e)(7) were justified.   The only explanation defendant has given in its pleadings for all of its withholdings under section 6103(e)(7) is that "Senior Counsel A.M. Gulas has been delegated the authority to determine whether the release of return information would seriously impair the federal tax administration, and she made that determination as to the material designated as withheld in the *Vaughn* indexes."   Def.'s Reply at 10, citing Franklin Decl. ¶ 14, and 2d Gulas Decl. ¶ 15; *see also* Def.'s Mem. at 15–16.   Defendant also claims that "[r]elease of the material designated as withheld in the *Vaughn* indexes would impair federal tax administration by revealing the scope, direction and nature of the Service's investigation into Sea Shepherd . . . and by identifying confidential informants."   Def.'s Mem. at 16.   In addition, in the *Vaughn* Indexes, defendant repeatedly contends that the information it has withheld "would seriously impair Federal tax administration because it would result in a chilling effect on confidential sources coming forward, thereby hampering future investigations."   *See* Examination *Vaughn* Index at 1–12; Counsel *Vaughn* Index at 2–3, 6–8, 10–13.

But defendant's investigation of plaintiff is now closed, *see* Attach. 1 to Pl.'s Notice, and, as the Court has already found, defendant has not established that its informants "did in fact receive an express grant of confidentiality" or that other circumstances exist that would "support the inference of confidentiality."   *See CREW*, 746 F.3d at 1101 (citations and internal quotation marks omitted).   So neither the status of the investigation nor the concerns about revealing sources justifies defendant's reliance on section 6103(e)(7) here.

Defendant's declarations shed no further light on this question.   The Franklin declaration merely repeats the assertion that Gulas had the authority to decide whether to withhold information on this basis.   Franklin Decl. ¶ 14.   And Gulas provides no additional insight into her determination

in her two declarations, other than to suggest that the ongoing nature of an investigation could be a basis for a finding that the release of certain information would impair federal tax administration. *See* 2d Gulas Decl. ¶ 14.

Although the D.C. Circuit has not provided specific guidance as to how the IRS may show that the release of certain records would compromise federal tax administration, FOIA requires more than the conclusory assertions presented here. *See Nat'l Sec. Counselors*, 849 F. Supp. 2d at 11. Moreover, the cases cited by the IRS to support its withholdings also indicate that more is required. *See Currie v. IRS*, 704 F.2d 523, 530–32, 534 (11th Cir. 1983) (upholding district court's determination that withholding was justified under Exemption 3 and section 6103(e)(7) where district court had engaged in extensive *in camera* review of documents and concluded that "[t]he release of the documents would hamper" an ongoing investigation ); *Radcliffe v. IRS*, 536 F. Supp. 2d 423, 436, 439–40 (S.D.N.Y. 2008) (finding IRS's withholdings under Exemption 3 and section 6103(e)(7) justified where IRS declarants had provided detailed descriptions of withheld information and the investigation was ongoing). Under these circumstances, the Court finds that defendant has not adequately justified its reliance on Exemption 3 and section 6103(e)(7) in withholding third-party identifying information.

Plaintiff also challenges the IRS's redaction of third-party taxpayer identification numbers from copies of Sea Shepherd's own QuickBooks data found at pages 004069, 004071, 004073, 004075, 004078, 004080, and 004083. Pl.'s Opp. at 14; *see also* Examination *Vaughn* Index at 6. Plaintiff contends that this data, which it states pertains to its payees, constitutes its own "return information," and should not be withheld. Pl.'s Opp. at 14–15. Plaintiff further notes that the IRS has failed to redact other portions of these records that would also constitute "return information" under the IRS's approach, such as the payees' names and identities. *Id.* at 15. Defendant responds

that its withholding of this information was justified by Exemption 3 and section 6013(e)(7) because the withheld information is "return information," and because, again, "Senior Counsel A.M. Gulas has been delegated the authority to determine whether the release of return information would seriously impair the federal tax administration, and she made that determination" with respect to these records.  Def.'s Reply at 10, citing Franklin Decl. ¶ 14, and 2d Gulas Decl. ¶ 15; *see also* Def.'s Mem. at 15–16.

Neither party's pleadings, however, address the fact that, in its *Vaughn* Index, defendant actually justified these particular withholdings on the basis of FOIA Exemption 3 and section 6103(a), not section 6103(e)(7).  *Compare* Examination *Vaughn* Index at 6 (invoking section 6103(a)), *with* Def.'s Reply at 8 (stating that this material was withheld under Exemption 3 and section 6103(e)(7)).  The IRS bears the burden of justifying its withholdings under FOIA, 5 U.S.C. § 552(a)(4)(B), and because it has not clearly identified and explained the basis for its withholding, it has not carried that burden here.  Moreover, to the extent that the IRS's withholding of this information was based on section 6103(e)(7), the IRS has also not justified its redactions for the reasons stated above in connection with the IRS's other withholdings under that provision.

## IV.    Many of defendant's withholdings under Exemption 5 are justified.

Plaintiff has only challenged a handful of the numerous redactions and withholdings made by defendant under FOIA Exemption 5.[11]  *See* Pl.'s Opp. at 29–30.  Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available

---

[11]    Specifically, plaintiff contends that defendant has not justified its invocation of Exemption 5 and the deliberative process privilege with respect to the pages Bates numbered 012398, 012400–012401, 012404, 012467, 012533–012534, and 012569–012571, and that defendant has not justified its invocation of Exemption 5 and the attorney-client privilege with respect to pages 012208–012210 and 012215–012216.  Pl.'s Opp. at 29 & n.16.  The propriety of any redactions under Exemption 5 that plaintiff has not challenged is conceded.  *See Hopkins*, 284 F. Supp. 2d at 25, *aff'd* 98 F. App'x 8; *Tax Analysts*, 117 F.3d at 610.

by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (holding that a record may be withheld under Exemption 5 only if "its source [is] . . . a Government agency, and it . . . fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it"). Exemption 5 "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the attorney-client privilege and the executive "deliberative process" privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981). The agency seeking to withhold a document bears the burden of showing that an exemption applies. *Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). After conducting an *in camera* review of the withholdings that plaintiff has challenged, the Court finds that Exemption 5 justifies some, but not all, of the agency's redactions.

## A. *Defendant's Deliberative Process Withholdings*

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9 (citations omitted), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). Thus, the privilege only "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *accord McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011). "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take

of the consultative process.'"  *Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

In this case, plaintiff challenges the withholdings described in the *Vaughn* Index for IRS Counsel Records with respect to the pages Bates numbered 012398, 012400–012401, 012404, 012467, 012533–012534, and 012569–012571.  Pl.'s Opp. at 29.  After conducting an *in camera* review of these pages, the Court makes the following findings:

- Page 012398:  The deliberative process privilege justifies the withholding of all of the redacted material except for the information described in defendant's *Vaughn* index as "[t]wo lines consisting of Waldram's discussion of information received from a confidential informant."  *See* Counsel *Vaughn* Index at 6.

- Pages 012400–012401:   The deliberative process privilege does not justify any of the redactions defendant made to these pages.

- Page 012404:  Defendant states that it has redacted "[e]ight lines" from this record.  Counsel *Vaughn* Index at 7.  The Court finds that the deliberative process privilege justifies the withholding of lines one, two, four, five, and eight in their entirety.  In addition, the deliberative process privilege justifies the withholding of the final word of line three and the final two words of line seven.  The redactions of the remainder of line three, all of line six, and the remainder of line seven are not justified by the deliberative process privilege.

- Page 012467:  The deliberative process privilege justifies the withholding of all of the redacted material.

- Pages 012533–012534:  The deliberative process privilege justifies the withholding of both pages in their entirety.

- Pages 012569–012571:  These pages are substantially identical to pages 012400–012401 and 012398 and the Court's findings with respect to those pages apply.

The Court notes that defendant also withheld all of the challenged material under Exemptions 7(A), 7(D), and 3 in conjunction with section 6013(e)(7).  *See* Counsel *Vaughn* Index at 6–7, 10, 13.  Therefore, on remand, defendant must provide a more detailed justification for why these exemptions would justify the withholding of any material that the Court has concluded is not

covered by Exemption 5 and release any reasonably segregable non-exempt information to plaintiff.

### B. Defendant's Attorney-Client Privilege Withholdings

The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States*, 617 F.2d at 862. The privilege also protects communications from attorneys to their clients that "'rest on confidential information obtained from the client.'" *Tax Analysts*, 117 F.3d at 618, quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984); *see also Mead Data*, 566 F.2d at 254. In the FOIA context, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of attorney-client privilege. *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998), citing *Coastal States*, 617 F.2d at 863.

Plaintiff has challenged defendant's reliance on Exemption 5 and the attorney-client privilege to withhold information from the pages Bates numbered 012208–012210 and 012215–012216. After reviewing these pages *in camera*, the Court finds that all of defendant's redactions are justified by Exemption 5 and the attorney-client privilege.

## CONCLUSION

For the reasons stated above, the Court finds that defendant's search for records responsive to plaintiff's FOIA request was inadequate, and that defendant has failed to justify its reliance on most of the FOIA exemptions that it invokes.   Therefore, defendant's motion for summary judgment will be denied, and the Court will remand this case to the agency.   Defendant is instructed to conduct a further search for responsive records, to provide a more detailed justification for the adequacy of its search and for any withholdings of responsive material, and to release any reasonably segregable non-exempt material to plaintiff consistent with the FOIA statute and this opinion.   A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 31, 2015