# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                          )
SEA SHEPHERD CONSERVATION                 )
SOCIETY,                                  )
                                          )
          Plaintiff,                      )
                                          )
     v.                                   )          Civil Action No. 13-1422 (ABJ)
                                          )
INTERNAL REVENUE SERVICE,                 )
                                          )
          Defendant.                      )
———————————————————— )

## MEMORANDUM OPINION

Plaintiff Sea Shepherd Conservation Society ("Sea Shepherd") brought this action under the Freedom of Information Act ("FOIA") against defendant the Internal Revenue Service ("IRS"), seeking all records related to itself in IRS files dated January 1, 2006 to May 13, 2013.  Compl. [Dkt # 1].  On March 31, 2015, the Court remanded the matter to the IRS so that the agency could conduct additional searches, provide more detailed descriptions of its searches and more detailed justifications of its withholdings, and release any non-exempt portions of responsive records to plaintiff.  *Sea Shepherd Conservation Soc'y v. IRS*, 89 F. Supp. 3d 81 (D.D.C. 2015).

With that process now complete, the parties have again cross-moved for summary judgment, and these pleadings also address the adequacy of the agency's searches and the justifications for its withholdings.  Def.'s Mot. for Summ. J. [Dkt # 35] ("Def.'s Mot."); Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. [Dkt # 35-1] ("Def.'s Mem."); Pl.'s Cross-Mot. for Summ. J. [Dkt. # 37] ("Pl.'s Cross-Mot."); Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. and in Supp. of Pl.'s Cross-Mot. [Dkt. # 37-1] ("Pl.'s Cross-Mem.").  Because the Court finds once again that one of defendant's searches was inadequate, it will grant plaintiff's motion in part, and remand the matter to the agency for a second time, so that the agency can renew its searches of the Exempt

Organizations Examinations function.  But because the agency adequately searched for records in the National & Area Chief Counsel Office of TEGE, the Exempt Organizations Rulings & Agreements function, the Communications & Liaison Office, and the Whistleblower Office, the Court will grant defendant's motion in part as well.  In addition, the Court finds that defendant's invocation of Exemptions 3 and 7(D) is justified, and it will grant defendant's motion for summary judgment in part on those issues.  But the Court finds that the agency's *Glomar* response with regard to records from the Whistleblower office is not justified, based on the unique circumstances of this case.  So the Court will grant plaintiff's motion in part on that issue, as well.

## BACKGROUND

I.      **Sea Shepherd's FOIA Request, IRS's First Search, and the Court's Remand**

Sea Shepherd is a 501(c)(3) non-profit environmental organization dedicated to the preservation of oceanic habitats and wildlife.  *Sea Shepherd*, 89 F. Supp. 3d at 86.[1]  It filed a FOIA request on May 13, 2013, seeking (1) "any and all documents, from January 1, 2006, through the

---

1       The Court has described the factual background in detail in its March 31, 2015 Memorandum Opinion:  "Since 2003, plaintiff has engaged in numerous direct confrontation campaigns against the Institute of Cetacean Research, which plaintiff describes as an organization that hunts whales in the Southern Ocean for commercial purposes in violation of international law. Plaintiff claims that Cetacean is funded, in part, by the Japanese government." *Sea Shepherd*, 89 F. Supp. 3d at 86 (citations omitted).  Plaintiff seeks information on "whether the IRS acted on the basis of Japan's diplomatic demands rather than for tax-related reasons" when it initiated an audit of its tax-exempt status, and it insists that the records sought in this lawsuit "could provide a definitive answer."  Pl.'s Cross-Mem. at 10.  The memorandum in support of plaintiff's cross motion spends almost seven pages recounting the lurid details of the dispute between plaintiff, the Japanese government, and the Institute of Cetacean Research. *Id.* at 2–10.  But none of that factual background information is relevant to the questions before the Court, which boil down to whether the IRS conducted an adequate search for records, and whether it has adequately supported its claimed exemptions.  In any event, the Court notes that Sea Shepherd's activities with respect to the Institute have resulted in injunctions and findings of contempt against it.  *See Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 940 (9th Cir. 2014) (finding Sea Shepherd in contempt for aiding and abetting a violation of an injunction prohibiting it "from physically attacking or coming within 500 yards of any of the [Institute's] whaling and fueling vessels on the open sea.").

date of this request, related to Sea Shepherd," (2) "any and all documents related to the examination

of Sea Shepherd commenced by the Internal Revenue Service on or about January 4, 2013," (3)

"any and all documents relating to any complaint . . . regarding Sea Shepherd's activities or

qualifications for tax-exempt status after January 1, 2006," and (4) "any and all documents related

to any request from any person that the Internal Revenue Service examine Sea Shepherd."  Ex. A

to Compl. [Dkt. # 1] at 1.   Plaintiff specifically requested that the IRS search the following

locations:  the files of Peter Huang, the agent who handled the examination of plaintiff's tax-

exempt status; the National and Area Chief Counsel Offices of the Tax-Exempt and Government

Entities ("TEGE") function of the IRS; the office of the Director of Exempt Organizations

Examinations in Dallas, Texas; and the office of Exempt Organizations Ruling and Agreements in

the TEGE National Office.  *Id.*

When defendant did not timely respond to the FOIA request, Compl. ¶¶ 7–9, Sea Shepherd

filed suit.  Compl.   After the lawsuit had been commenced, the IRS conducted a search and

produced more than 12,000 pages of responsive, non-exempt records.   Def.'s Statement of

Undisputed Material Facts [Dkt. # 35-2] ("Def.'s SOF") ¶ 3; *see* Pl.'s Statement of Genuine Issues

in Opp. to Def.'s SOF [Dkt. # 37-2, 38-2] ("Pl.'s SOF") ¶ 3.

The IRS moved for summary judgment on May 20, 2014, arguing both that its search was

adequate, and that its production included all of the responsive and non-exempt documents.  Def.'s

SOF ¶ 4; Pl.'s SOF ¶ 4.   On March 31, 2015, the Court denied the IRS's motion for summary

judgment and remanded the matter to the agency.  *Sea Shepherd*, 89 F. Supp. 3d at 89–103.   The

Court held that certain of defendant's declarations were inadequate:

> First, none of the declarations adequately addresses plaintiff's request for
> "any and all documents" related to it . . . or even indicates that a search for
> "any and all documents" related to plaintiff was actually conducted.
> Second, none of the declarations describes defendant's overall "rationale

> for searching certain locations and not others."  And third, the individual
> declarations suffer from numerous other deficiencies . . . .

*Id.* at 91 (internal citations omitted).  The Court then "turn[ed] to those records that the IRS did

identify," and found that the claimed exemptions – exemptions 6 and 7 – were not justified.  *Id.* at

94–98.  The Court also found that the IRS's reliance on exemption 3 was not uniformly justified.

*Id.* at 98–102.  But the Court did find many of the agency's exemption 5 withholdings justified.

*Id.* at 102–03.  The Court instructed the IRS to "conduct a further search for responsive records,

to provide a more detailed justification for the adequacy of its search and for any withholdings of

responsive material, and to release any reasonably segregable non-exempt material to [Sea

Shepherd] consistent with the FOIA statute and this opinion."  *Id.* at 104.

## II.    Procedural History

On September 15, 2015, after concluding its supplemental search and releasing additional

materials to Sea Shepherd, the IRS filed a renewed motion for summary judgment, along with a

statement of facts, an updated *Vaughn* Index, and several declarations.  Def.'s Mot.; Def.'s Mem.;

Def.'s SOF; *Vaughn* Index [Dkt. # 35-5]; 3d Decl. of A.M. Gulas, Ex. 3 to Def.'s Mot. [Dkt. # 35-

3] ("3d Gulas Decl."); 2d Decl. of Michael Franklin [Dkt. # 35-4] ("2d Franklin Decl."); Decl. of

Nia Dowdy [Dkt. # 35-6] ("Dowdy Decl."); Decl. of Jon Waddell [Dkt. # 35-7] ("Waddell Decl.");

Decl. of Margaret Von Lienen [Dkt. # 35-8] ("Von Lienen Decl."); Decl. of Dean Patterson [Dkt.

# 35-9] ("Patterson Decl."); Decl. of Cindy Stuart [Dkt. # 35-10] ("Stuart Decl.").  Plaintiff then

filed a cross-motion for summary judgment.  Pl.'s Cross-Mot.; Pl.'s Cross-Mem.  It also attached

a "Statement of Genuine Issues in Opposition to Defendant's Statement of Material Facts," Pl.'s

SOF, its own Statement of Undisputed Material Facts, Pl.'s Statement of Undisputed Material

Facts in Supp. of Pl.'s Cross-Mot. [Dkt. # 37-3, 38-3] ("Pl.'s Cross-SOF"), and two supporting

declarations.  Decl. of Ann E. Prezyna [Dkt. # 37-4]; 2d Decl. of Christopher S. Rizek [Dkt. # 37-5].

On December 4, 2015, defendant filed a reply in support of its motion and cross-opposition to plaintiff's motion.  Def.'s Reply in Supp. of Def.'s Mot. & Opp. to Pl.'s Cross-Mot. [Dkt. # 42, 43] ("Def.'s Reply"), along with a response to plaintiff's statement of facts and two additional declarations.  And on January 4, 2016, Sea Shepherd filed a cross-reply in support of its motion.  Pl.'s Reply Mem. in Supp. of its Cross-Mot. [Dkt. # 45] ("Pl.'s Cross-Reply").[2]  The Court also granted the IRS's requests, over plaintiff's objections, to submit declarations *ex parte* and *in camera* in support of their motion and their cross-opposition, Min. Order (Sept. 18, 2015); Min. Order (Dec. 7, 2015).  On August 8, 2016, the Court ordered the agency to provide another *ex parte* and *in camera* declaration.  Min. Order (Aug. 8, 2016).  The Court ultimately ordered defendant to file part of the *in camera* submission on the public docket, Min. Order (Aug. 25, 2016), and defendant submitted a redacted version of the August 15, 2016.  *See* Redacted Decl. of Michael Franklin [Dkt. # 47] ("Redacted Franklin Decl.").

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "FOIA cases are typically and appropriately decided on motions for summary judgment."  *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

---

2    Plaintiff argues that "[t]he IRS has still not articulated any overall search rationale," and it concludes that the "slapdash quality of its latest summary judgment filings" prove that "the IRS does not take seriously its obligations under FOIA."  Pl.'s Cross-Mem. at 2.  Sea Shepherd's pleadings seem to focus more on accusations and heated rhetoric than legal argument.  That approach has not made their positions more persuasive.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion."  *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982).  In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party."  *N.S. ex rel. Stein v. District of Columbia*, 709 F.

Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.  In a FOIA action, where a plaintiff has neither alleged nor provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations."  *Moore*, 601 F. Supp. 2d at 12.

### ANALYSIS

FOIA requires the release of government records upon request.  Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused."  *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential"), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed."  *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption."  *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).  "[W]hen an agency seeks to withhold information, it must provide a 'relatively detailed justification'" for the withholding, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C.

Cir. 2007), quoting *King v. DOJ*, 830 F.2d 210, 219 (D.C. Cir. 1987), through a *Vaughn* Index, an affidavit, or by other means. *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994).

After asserting and explaining its exemptions, an agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would effectively be disclosed." *Johnson*, 310 F.3d at 776, quoting *Mead Data*, 566 F.2d at 261. "[A] district court has the obligation to consider the segregability issue *sua sponte*, regardless of whether it has been raised by the parties." *Id.*, citing *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

Because a court must determine *de novo* whether an agency properly withheld information, a court may examine the withheld records *in camera*. 5 U.S.C. § 552(a)(4)(B); *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987) ("[W]hen the requested documents 'are few in number and of short length,' *in camera* review may save time and money."), quoting *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980).

## I.    Defendant has failed to adequately justify one of its renewed searches.

### A.    Legal Standard

When an agency's search is questioned, it must show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011), quoting *Valencia-Lucena v. U.S. Coast*

*Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999); *see also Oglesby*, 920 F.2d at 68; *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

To demonstrate that it has performed an adequate search for documents responsive to a FOIA request, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). A declaration is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F. Supp. 2d at 92.

A declaration, therefore, must at least include the agency's "rationale for searching certain locations and not others." *Defs. of Wildlife*, 623 F. Supp. 2d at 92; *see also Nat'l Sec. Counselors v. CIA*, 849 F. Supp. 2d 6, 11 (D.D.C. 2012) (finding affidavit sufficient where it "outline[d] with reasonable detail the CIA's decision to limit the search" to a particular area); *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (affirming the grant of summary judgment where the initial search was inadequate, but the ultimate search was reasonable, and where the agency provided a detailed declaration articulating the search process). Agency affidavits attesting to a reasonable search "are accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), that can be rebutted only "with evidence that the agency's search was not made in good faith." *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).

An agency's declarations "need not 'set forth with meticulous documentation the details of an epic search for the requested records,'" *Defs. of Wildlife*, 623 F. Supp. 2d at 91, quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), but they should "describe what records were searched, by whom, and through what processes." *Id.*, quoting *Steinberg v. DOJ*, 23 F.3d 548,

552 (D.C. Cir. 1994).  Conclusory assertions about the agency's thoroughness are not sufficient. *See Morley v. CIA*, 508 F.3d 1108, 1121–22 (D.C. Cir. 2007) (finding agency's "single conclusory affidavit" to be inadequate).  At the same time, however, where an "affidavit could in theory be more detailed, that fact alone does not warrant denying summary judgment in favor of" a defendant.  *White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012).

**B.    Defendant has adequately explained all but one of its renewed searches.**

To address the inadequacies of its first search, the IRS conducted supplemental searches of three functions:  the National and Area Chief Counsel Offices of TEGE, the Exempt Organizations Rulings and Agreements section, and the Exempt Organizations Examinations function, *see* Def.'s Mem. at 8–15, as well as the IRS Communications and Liaison office, and the IRS Whistleblower Office.  Def.'s SOF ¶ 33; Pl.'s SOF ¶ 33.  To demonstrate the adequacy of these searches, the IRS submitted six declarations:

- The third declaration of A.M. Gulas, Senior Counsel in the Office of the Associate Chief Counsel, which describes her coordination with others in the agency to complete an adequate search.  *See* 3d Gulas Decl.

- The declaration of Nia Dowdy, a Paralegal Specialist in the Disclosure & Litigation Support ("DLS") branch of the Office of Associate Chief Counsel, which describes her search for records in the National and Area TEGE offices.  *See* Dowdy Decl.

- Two declarations from Margaret Von Lienen describing the search of the Exempt Organizations Examinations function.  *See* Von Lienen Decl.; 2d Von Lienen Decl..

- The declaration of Jon Waddell, Senior Manager in Exempt Organizations Rulings and Determinations Unit, which describes the search of his unit.  *See* Waddell Decl.

- The declaration of Dean Patterson, a Public Affairs Specialist in the Media Relations Division of the Communications & Liaison Office, which describes his coordination with the branch chiefs of that office to search for responsive records. *See* Patterson Decl.

- The declaration of Cindy Stuart, a Management Analyst and Executive Assistant in the Whistleblower Office, which describes her search for records and the agency's *Glomar* response.  *See* Stuart Decl.

1.    The renewed search of the National and Area Chief Counsel Offices of
TEGE was adequate.

In its first decision, the Court found that the search of the National & Area Chief Counsel
Offices of TEGE was inadequate.  *Sea Shepherd*, 89 F. Supp. 3d at 94.  Although a search
memorandum was sent to the National TEGE Counsel Office, the declaration provided "no
indication that . . . anyone . . . ever responded to the request to search for responsive records, nor
does the declaration indicate that [the declarant] contacted anyone in the Area Chief Counsel
offices of TEGE."  *Sea Shepherd*, 89 F. Supp. 3d at 93.  Despite the agency's attempts to cure the
deficiency during the pendency of the litigation, the Court concluded that the agency's efforts were
insufficient because they did "not sufficiently indicate that defendant conducted a search for
records responsive to all portions of plaintiff's request," nor did they "explain the rationale for
only contacting Weiner in the Pacific Coast Area TEGE Counsel office, and no other individuals
or offices, with respect to plaintiff's full request."  *Id.* at 93–94.

With its renewed motion for summary judgment, IRS has offered a declaration of paralegal
specialist Nia Dowdy to further describe its first search of the National Counsel Office.  Dowdy
Decl.  Dowdy's duties include processing FOIA requests; she has knowledge of the records kept
by the National Counsel Office, and of the procedures for processing requests for records.  Def.'s
SOF ¶ 24; Pl.'s SOF ¶ 24.

Defendant now states that on or about June 19, 2013, DLS received a copy of Sea
Shepherd's FOIA request, which was subsequently assigned to Dowdy.  Def.'s SOF ¶ 26; Pl.'s
SOF ¶ 26.  Dowdy searched CASE-MIS, an automated case tracking system, for Sea Shepherd's
full name, because, as she explains, files involving a particular taxpayer are labeled using that
taxpayer's name.  Def.'s SOF ¶¶ 27–29; Pl.'s SOF ¶¶ 27–29.  The search returned two case
numbers:  PRESP-111843-13, assigned to Courtney Jones in the Exempt Organizations branch of

the TEGE Associate Office in Washington, D.C., and POSTU-103863-13, assigned to Mark Weiner in the Los Angeles TEGE office. Def.'s SOF ¶ 29; Pl.'s SOF ¶ 29. There were no other case files in CASE-MIS associated with Sea Shepherd. Def.'s SOF ¶ 29; Pl.'s SOF ¶ 29.

Dowdy sent Jones a search memorandum and requested a copy of her case file, and she also sent Jones a copy of plaintiff's FOIA request and a form to provide a description of her search efforts. Def.'s SOF ¶ 30; Pl.'s SOF ¶ 30. The records that Dowdy received from Jones were produced to Sea Shepherd. Def.'s SOF ¶ 32; Pl.'s SOF ¶ 32.

In addition, Senior Counsel A.M. Gulas, who coordinated the defendant's overall response to plaintiff's request, *see, e.g.*, *Sea Shepherd*, 89 F. Supp. 3d at 92, searched CASE-MIS to determine who in TEGE might have responsive documents. Def.'s SOF ¶ 36; Pl.'s SOF ¶ 36.[3] The system returned the same two files: POSTU-103863-13, which was assigned to Mark Weiner and Patricia Wang in the TEGE Area Counsel's office in Los Angeles, Def.'s SOF ¶ 37; Pl.'s SOF ¶ 37; and PRESP-111841-13, which had been assigned to Courtney Jones in the Office of Associate Chief Counsel of TEGE, and was reviewed by Kenneth Griffin. Def.'s SOF ¶ 41; Pl.'s SOF ¶ 41.[4]

---

3       Though Sea Shepherd asserts that Gulas did not disclose the search terms she used, Pl.'s Cross-Mem. at 15, the IRS has since clarified that the best way to query CASE-MIS is by using a taxpayer's name to name any files related to that taxpayer, and that Gulas searched using Sea Shepherd's full name. Def.'s Reply at 6–7; *see* 3d Gulas Decl. ¶¶ 3, 8, 12.

4       The parties do not dispute that OCC employees "are required to post any time spent working on a case to the file number associated with that case," and that "Counsel employees are required to place paper copies of all documents they receive or create while working the case in the case file, including any emails the employee sent or received." Def.'s SOF ¶ 28; Pl.'s SOF ¶ 28.

The IRS asserts that Gulas had already obtained all responsive documents in Weiner's control during her first search. 3d Gulas Decl. ¶ 4.[5]  To obtain any documents created or compiled by Wang, Gulas sent Wang a copy of Sea Shepherd's FOIA request, and asked her to search for responsive documents.  Wang responded by email on April 29, 2015, indicating that she did not have any additional responsive documents.  *Id.* ¶ 5.  Gulas's declaration states that Wang forwarded the FOIA request to Kirk Paxson, who was the Deputy Division Counsel-Associate Chief Counsel for TEGE at the time of the request, and had been copied on certain emails that had been deemed responsive.  *Id.* ¶ 6.  Paxson responded to Gulas by email and reported that he did not have additional responsive documents.  *Id.*  Paxson then forwarded the FOIA request to Helene Winnick, the Special Counsel to the Division Counsel, who replied that she had no responsive files, either.  *Id.* ¶ 7.[6]

The second file identified in CASE-MIS, PRESP-111841-13, had been assigned to Courtney Jones in the Office of Associate Chief Counsel of TEGE, with Kenneth Griffin as her reviewer.  Def.'s SOF ¶ 41; Pl.'s SOF ¶ 41.  Gulas had previously obtained from Dowdy a copy of Jones's PRESP file, including all of the emails and documents that Jones had compiled.  Def.'s SOF ¶ 42; Pl.'s SOF ¶ 42.  Gulas also sent Griffin, Jones's reviewer, a copy of the FOIA request and asked him to search for responsive records.  Def.'s SOF ¶ 43; Pl.'s SOF ¶ 43.  Griffin

---

5       Sea Shepherd disagrees that Gulas had already obtained the responsive documents from Weiner.  Pl.'s SOF ¶ 37.  But Gulas's declarations submitted in connection with the pre-remand search identified the Weiner documents as well, so Sea Shepherd's objection is not well founded.  *See* 2d Gulas Decl., Ex. 4 to Def.'s Mot. for Summ. J. [Dkt. # 16-4] ("2d Gulas Decl.").

6       Gulas's declaration does not explain why Paxson believed that Winnick would have responsive documents, an omission that Sea Shepherd seizes upon in its challenge of Gulas's declaration.  *See* Pl.'s SOF ¶ 40.  But Gulas explains that Winnick ultimately reported that she did not have any responsive documents, and Sea Shepherd does not explain why that representation should not be afforded a presumption of good faith.  So the Court will not invalidate the search on that basis.

responded via email that he had no responsive documents and explained that his involvement in the matter had been minimal.  Def.'s SOF ¶ 43.  Griffin included Senior Counsel Don Spellman on the email, and asked Spellman to "look for any documents or emails he might possess."  *Id.*; Pl.'s SOF ¶ 43.  Spellman responded to Gulas, and reported that he reviewed all of his records and emails, and had located four emails on which he had been copied, but that he located no paper files pertaining to plaintiff.  Def.'s SOF ¶ 44; Pl.'s SOF ¶ 44.  Gulas subsequently determined the emails received from Spellman were duplicates of emails that had been previously produced at control numbers 012208–012228.  Def.'s SOF ¶ 44; Pl.'s SOF ¶ 44.

Gulas's searches returned no other files associated with plaintiff's name.  Def.'s SOF ¶ 45. OCC does not have any system other than CASE-MIS which would have likely produced responsive records.  *Id.*  According to Gulas, the "best way to locate the counsel records created or compiled for a particular taxpayer's case is to identify the counsel employee(s) assigned to such case by consulting CASE-MIS."  3d Gulas Decl. ¶ 3.  Because Gulas obtained responsive documents, or a response indicating that no documents were found, from each person assigned to or involved with the two Sea Shepherd cases, Gulas concluded there were no additional locations to search for OCC documents.  *Id.* ¶ 12.

Sea Shepherd argues that the searches were deficient because only Gulas submitted a declaration, and Gulas lacks personal knowledge of the searches conducted by the other TEGE employees.  Pl.'s SOF ¶ 38.  In essence, Sea Shepherd demands an unbroken chain of declarations from each person who received a request to search their area for responsive documents.  *See e.g.* Pl.'s SOF ¶ 39, 40.  But because the statute does not require the IRS to undertake such a painstaking approach, the Court will find the search of TEGE to be adequate.

Although defendant's declarations could certainly be more detailed, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg*, 745 F.2d at 1485 (emphasis in original). The adequacy of an agency's search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Id.* "In cases where documents are collected from several different offices, unit-specific descriptions are not required, and the affidavit of the officer ultimately responsible for the supervision of the FOIA search is sufficient." *Trans Union LLC*, 141 F. Supp. 2d at 68–69, citing *Judicial Watch, Inc. v. HHS*, 27 F. Supp. 2d 240, 244 (D.D.C. 1998) ("Unit-specific descriptions are not required, at least where plaintiff has failed to raise some issue of fact necessitating rebuttal.").

In this case, Gulas coordinated a wide-ranging search for records in numerous components of TEGE, instructing the searchers to look for any records related to Sea Shepherd. Since what plaintiff sought was exactly that – all records related to itself – defendant's failure to identify particular search terms used by Paxson and Wang does not indicate that the search was inadequate. *See Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 120 (D.D.C. 2005) (stating that the "fail[ure] to enumerate any specific search terms used" in a FOIA search "might not be enough to invalidate an otherwise adequate affidavit.").

The Court concludes that Dowdy's and Gulas's searches of OCC were "reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild*, 641 F.3d at 514, quoting *Valencia-Lucena*, 180 F.3d at 325. Gulas and Dowdy identified the relevant database that was reasonably likely to contain all records concerning Sea Shepherd within the time period at

issue. They described the search methodology – plaintiff's name.[7] And they contacted all of the employees who were listed as having worked on the case, and tracked down any additional leads that flowed from those contacts. So the Court concludes that there is enough here to support judgment for the agency as to the adequacy of the searches of OCC and TEGE.

### 2. The renewed search of the Exempt Organizations Rulings and Agreements function was adequate.

Rulings and Agreements ("R&A") is one of two main components of the Exempt Organizations Division of TEGE (the other main component is Exempt Organizations Examinations). Def.'s SOF ¶ 46; Pl.'s SOF ¶ 46. R&A is comprised of two sub-units, Determinations and Technical. Def.'s SOF ¶ 48; Pl.'s SOF ¶ 48. It uses two primary databases to manage case files: EDS and TEDS. Cases are identified either by the entity's name and taxpayer identification number, or by an employee identification number ("EIN"), and both systems can be searched with an entity's name or EIN. *Id.* If either of R&A's sub-units – Determinations and Technical – worked on a case, it would appear in EDS or TEDS. *Id.*

The Court previously found the search of R&A inadequate because the declaration in support of the initial search stated only that R&A would not have files while an examination is pending, but it did not address plaintiff's request for "any and all" records related to Sea Shepherd. *Sea Shepherd*, 89 F. Supp. 3d at 94.

So the agency went back and did another search. Around April 6, 2015, Gulas and Michael Franklin, an attorney in the Office of the Associate Chief Counsel, contacted Jon Waddell, a senior

---

7 Sea Shepherd argues that the Gulas declaration is deficient because Gulas failed to disclose the search terms she used in CASE-MIS. Pl.'s SOF ¶ 45. Though Sea Shepherd's point is well taken because the declaration does not expressly state the search terms that Gulas used, it is clear that Gulas searched using Sea Shepherd's full name. Gulas's declaration asserts that "when a case involves a particular taxpayer, the taxpayer's name is used to name the file." 3d Gulas Decl. ¶ 3. Later, she makes clear that "[r]esearch of the CASE-MIS system identified no files opened *under the plaintiff's name* other than the two described above." *Id.* ¶ 12 (emphasis added).

manager in R&A Determinations, provided Waddell with a copy of Sea Shepherd's FOIA request, and asked him to search R&A for any responsive records.  Def.'s SOF ¶¶ 51–52; Pl.'s SOF ¶¶ 51–52.  At Waddell's request, Tracy Dornette, a Staff Assistant in Determinations, searched EDS and TEDS using Sea Shepherd's EIN, and did not locate any responsive documents in either system.  Def.'s SOF ¶ 53.  She also searched an online database of exempt organizations, and found Sea Shepherd's 1982 application file, which was outside of the timeframe at issue in Sea Shepherd's request, and was therefore not responsive.  *Id.*[8]  Waddell thus concluded that all locations likely to return responsive records were searched, and R&A did not contain any other records system which might return responsive results.  Waddell Decl. ¶ 9.

Plaintiff asserts that Waddell's declaration is insufficient because it does not establish the basis for his knowledge of Dornette's search.  Pl.'s SOF ¶ 53.  It also contests that Waddell's statement that all locations likely to return responsive records had been searched and that there were no other records system likely to produce responsive records because "it reflects an opinion or conclusion."  *Id.* ¶ 54.

Sea Shepherd's arguments are not persuasive.  The agency has explained that responsive documents would have come from one or two databases.  It searched both databases using a search term that it knows would return relevant information, and it found no records.  Because Waddell provided a rationale for Dornette's search and the search terms used, and has "aver[red] that all files likely to contain responsive materials . . . were searched," *Oglesby*, 920 F.2d at 68, the Court finds that the search of R&A was reasonably calculated to find all responsive documents.

---

8      Sea Shepherd disputes these statements because Dornette has not submitted a declaration and Waddell's declaration does not disclose the basis of his knowledge of Dornette's activities or conclusions.  Pl.'s SOF ¶ 53.  But for the reasons explained above, Sea Shepherd's objection is not well founded.  *See Trans Union LLC*, 141 F. Supp. 2d at 62; *Judicial Watch, Inc.*, 27 F. Supp. 2d at 244.

3.      The renewed search of the Exempt Organizations Examinations function remains inadequate.

In its review of the initial search of the Exempt Organizations Examinations function, the Court found the declarations describing the search of that function deficient for several reasons. In particular:  (1) "neither declarant [met] the basic requirement of averring that all files likely to contain responsive materials . . . were searched"; (2) the declaration of Kieu Ta failed to describe the file systems or search terms she used; and (3) both declarations failed to indicate that a search was conducted for any and all records related to plaintiff – rather than records related only to the audit of plaintiff.  *Sea Shepherd*, 89 F. Supp. 3d at 93.

The Exempt Organizations Examinations function is responsible for enforcement activities.  Def.'s SOF ¶ 55; Pl.'s SOF ¶ 55.  Its headquarters are in Dallas, Texas, and it also has six area offices.  Def.'s SOF ¶ 55; Pl.'s SOF ¶ 55.  Exempt Organizations receives information from the public about activities of 501(c)(3) entities.  Def.'s SOF ¶ 56; Pl.'s SOF ¶ 56.  Those referrals – which are entered into the Exempt Organizations Referral Database – often allege noncompliance with a tax law.  Def.'s SOF ¶ 56; Pl.'s SOF ¶ 56.  If a referral warrants further investigation, it is sent to an area office, where the examining agent maintains the case file.  Def.'s SOF ¶ 56–57; Pl.'s SOF ¶ 56–57.  There is usually little contact between the examining agent and the headquarters office.  Def.'s SOF ¶ 57; Pl.'s SOF ¶ 57.

In April 2015, Margaret Von Lienen, the Director of the Exempt Organizations Examinations function, was contacted by Richard Daly, Executive Assistant to the Deputy Division Commissioner, given a copy of Sea Shepherd's FOIA request, and asked to have Exempt Organizations Examinations in Dallas search for any documents, complaints, or referrals related to Sea Shepherd.  Def.'s SOF ¶ 60; Pl.'s SOF ¶ 60.  Von Lienen asserts that, at her direction, Regeina Hall in Exempt Organizations Examinations Program and Review, "searched her email

using 'Sea Shepherd Conservation Society' and 'SSCS,' and also searched case chronology reports in the Referral Database using Sea Shepherd's [EIN]. 2d Decl. of Margaret Von Lienen [Dkt. # 42-4] ("2d Von Lienen Decl.") ¶ 9.   Von Lienen reports that Hall used the search terms 'Sea*,' 'Shepherd*' and 'Conservation*.'"  *Id.*  She also avers that Roger Vera, Manager of Classification-Referrals – the unit which receives all incoming referrals – "searched the EO Referral Database for any referrals made about SSCS that were responsive to the request."  *Id.* ¶ 10.  Vera conducted his search using Sea Shepherd's EIN and a wildcard search – using the same terms that Hall did. *Id.* ¶ 11.  Vera also searched his email files using the same wildcard terms, in addition to searching paper referral files received by mail.  *Id.*

Von Lienen asserts that "all locations likely to contain responsive records located in EO Examinations have been searched and EO Examinations does not contain any other records system likely to produce[] records responsive to SSCS's request."  Von Lienen Decl. ¶ 10.  Sea Shepherd disputes this conclusion because the "record reflects that the only email account searched in the EO Examinations Dallas Headquarters was that of Regeina Hall, and Defendant has not established that no other employee within that office was likely to have sent, received, or been [copied] on emails responsive to Plaintiff's FOIA request."  Pl.'s SOF ¶ 64.  The Court agrees with Sea Shepherd.

Defendant's supplemental search is markedly better than the first because it details the locations searched and the search terms used.  However, the affidavits submitted still do not describe an adequate search.  First – and most important – none of the declarations provide an explanation for why it was likely that only Hall's and Vera's email accounts would include responsive records.  Defendant has offered no reason for why no other Exempt Organizations Examinations employee was likely to have sent, received, or been copied on responsive emails.

Second, it is unclear why Hall used different terms when searching her email and the referral database, and why those search terms were not the same as those utilized by Vera.  The varying search terms call into question whether defendant implemented a rational search methodology of the Exempt Organizations Examinations function.  *See Defs. of Wildlife*, 623 F. Supp. 2d at 92. The Court therefore finds that defendant's affidavits do not describe a search of the Exempt Organizations Examinations function that was reasonably calculated to uncover all responsive documents, and it will remand this aspect of the case to defendant for further action consistent with this opinion.

### 4.   The search of the Communications & Liaison Office was adequate.

The Court's initial memorandum opinion noted plaintiff's objection that defendant failed to describe a search of two other functions likely to have responsive documents:   the Communications and Liaison Office and the Whistleblower Office.  *Sea Shepherd*, 89 F. Supp. 3d at 92 n.3.  The Court concluded that "it need not rule on this issue" because "plaintiff did not mention either of these offices in its FOIA request, and the IRS was 'not obliged to look beyond the four corners of the request for leads to the location of responsive documents.'"  *Id.*, quoting *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996).  Nonetheless, on remand, the agency searched both of those components.  Because the Court finds that both searches were adequate, it will enter judgment for defendant as to both.

The Communications and Liaison Office has three subparts:   the Legislative Affairs Division, the National Public Liaison, and the Communications Division, which itself has five branches – National Office and Field Media Relations; Internal Communications; Social Media; Visual Education and Communications; and Technical Communications.  Def.'s SOF ¶¶ 66–67; Pl.'s SOF ¶¶ 66–67.  Dean Patterson is a public affairs specialist in the National Office and Field Media Relations Division.  Def.'s SOF ¶ 73; Pl.'s SOF ¶ 73.

On April 6, 2015, Patterson was contacted by Franklin and Gulas, who requested that he search the Communications & Liaison Office for any responsive records. Def.'s SOF ¶ 74; Pl.'s SOF ¶ 74. In turn, Patterson contacted each of the branch chiefs and the Staff Advisor to the National Public Liaison, and "asked them to search their areas, and ask their staffs to search, for any records responsive to Sea Shepherd's FOIA request and to provide [him] with copies of any such records, or confirm a negative result by email." Def.'s SOF ¶ 75; Pl.'s SOF ¶ 75. Patterson did not contact Legislative Affairs because Gulas informed him that she had already contacted that office's FOIA coordinator to conduct a search. Def.'s SOF ¶ 75; Pl.'s SOF ¶ 75.

"Patterson received negative responses from Internal Communications, Social Media, the National Public Liaison, Field Media Relations, and Visual Education and Communications." Def.'s SOF ¶ 76; Pl.'s SOF ¶ 76. According to Patterson's declaration, "[t]hree people located and forwarded to me a copy of the same email," which Patterson then forwarded to Gulas. Patterson Decl. ¶ 9; *see also* Def.'s SOF ¶ 76; Pl.'s SOF ¶ 76.[9]

Separately, on April 6, 2015, Gulas contacted Ross Kiser in the Legislative Affairs branch of Communications & Liaison, and asked him to search for any records responsive to plaintiff's request. Def.'s SOF ¶ 78; Pl.'s SOF ¶ 78. Kiser conducted his search through E-trak, a database used by the branch to manage and track correspondence. Def.'s SOF ¶¶ 79–82; Pl.'s SOF ¶¶ 79–82. E-trak can be searched using specific names or terms, and can also be searched using specific time periods. Def.'s SOF ¶ 83; Pl.'s SOF ¶ 83. Kiser performed a "topic search using the name 'Sea Shepherd Conservation Society' and its abbreviation 'SSCS'" for the time period specified

---

9       Sea Shepherd disputes this statement "to the extent that 'me' is anyone other than Patterson because the record does not reflect that any other individual received emails relating to plaintiff from persons in the National Public Liaison Division of Communications & Liaison." Pl.'s SOF ¶ 76. It is clear that Patterson is speaking in the first person in his declaration, and so Sea Shepherd's has not raised a genuine dispute of fact here that was worthy of any time or attention.

in plaintiff's request, and found no responsive records.  3d Gulas Decl. ¶ 20.  Gulas explains that "Legislative Affairs does not maintain any other records system likely to produce records responsive to SSCS's FOIA request." *Id.* ¶ 18.

The Court finds that both Kiser's and Patterson's searches were adequate.  Although Patterson does not describe in detail the search methods of the branch chiefs, "where documents are collected from several different offices, unit-specific descriptions are not required." *Trans Union LLC*, 141 F. Supp. 2d at 68.  So, both searches were reasonably calculated to uncover all relevant documents. *Oglesby*, 920 F.2d at 68.

> 5.   None of the other deficiencies asserted by plaintiff warrant remand.

Plaintiff also challenges defendant's search due to several other significant alleged omissions.  First, plaintiff claims that an IRS employee, Venus Harvey, destroyed files responsive to plaintiff's request while the litigation was pending.  Pl.'s Cross-Mem. at 13.  Plaintiff argues that destruction of responsive documents "plainly contravenes FOIA," and suggests that defendant's failure to even acknowledge the destruction shows "bad faith or incompetence." *Id*. In response, defendant argues that plaintiff's allegation is speculative and "based on [plaintiff's] flawed interpretation of responsive documents the Service released." Def.'s Cross-Reply at 9.  It concedes that a record bearing control number 012620–012621 references another document, and that an employee named Venus Harvey apparently destroyed the document referenced. *Id*. However, the agency proffers another declaration of Michael Franklin, who asserts that the referenced document was not responsive to plaintiff's request because it pertained to tax years 2000 and 2005, and plaintiff's request concerned documents from tax years 2006 through 2013. 3d Decl. of Michael Franklin [Dkt. # 42-2] (3d Franklin Decl.") ¶ 4.  It appears that plaintiff is arguing that the destruction of the file in question ought to cast doubt on the adequacy and good

faith of defendant's search generally,[10] but plaintiff has offered little to rebut the presumption of good faith that attaches to agency declarations.

Plaintiff also claims that defendant should have made some effort to search the records of former Exempt Organizations Director Lois Lerner and former Exempt Organizations Tax Law Specialist Justin Lowe.  *See* Pl.'s Cross-Mem. at 13–14.  Both Lerner and Lowe were involved in the conflict between Sea Shepherd and the Japanese government, and so, plaintiff argues, they were reasonably likely to possess responsive records.  *See id.*

Franklin asserts that defendant could not have directly searched Lerner or Lowe's files because both had "left employment with the IRS" by the time that the searches were completed. 3d Franklin Decl. ¶ 7.  However, the IRS admits that it had compiled documents from 88 custodians – including Lerner and Lowe – into a "Congressional database" in response to investigatory requests from Congressional committees, the Treasury Inspector General for Tax Administration, the FBI, and the DOJ.  *Id.* ¶ 6.  On October 20, 2015, Emma Woodward, an attorney assigned to respond to the Congressional inquiries who was familiar with the database, searched using the terms "Sea Shepherd," "SCSS," and "Sea Shepherd Conservation Society," and located 59 documents.  *Id.* ¶ 8.  After removal of duplicates, and after defendant redacted certain records, the remaining records were released to plaintiff.  *See id.* at 9–12.  Franklin's declaration has described "what records were searched, by whom, and through what processes," *Defs. of Wildlife*, 623 F. Supp. 2d at 91, and that the "Congressional database is the only location to search for [electronic] or hardcopy documents maintained by Lerner or Lowe that would be likely to

---

10      Sea Shepherd also makes clear that it views the destruction of this document as "potentially criminal conduct."  Pl.'s Cross-Mem. at 13.  This is but one example of Sea Shepherd's overheated and unnecessary rhetoric.

contain responsive records."  3d Franklin Decl. ¶ 7.  Although it seems that this database should have been searched originally, the Court finds that Woodward's belated effort was adequate.

Finally, plaintiff asserts that defendant failed to contact employee Leopold Cantu, despite the fact that certain case chronology reports show that he established case files for, and sent correspondence about, referrals concerning Sea Shepherd.  Pl.'s Cross-Mem. at 14.  Franklin's declaration acknowledges that documents "bearing control numbers 012619, 012621, and 012623 are case chronology reports" created by Exempt Organizations Examinations, and that they "contain the names [Leopold] Cantu and Carolyn Johnson next to entries stating 'Case Established.'"  3d Franklin Decl. ¶ 5.  Cantu and Johnson were Tax Examining Technicians who received referrals from the public "requesting the Service investigate tax exempt organizations for compliance" and "enter[ed] that information into the EO Referral database."  Id.  However, the agency explains that after Tax Examining Technicians establish cases, they "do not retain copies of referrals themselves," so Cantu and Johnson would not possess any responsive records.  Id.  For this reason, the Court finds that the failure to search Cantu's and Johnson's files – as opposed to the Exempt Organizations Examinations files in general – does not render defendant's search inadequate.

## II.    Defendant has fully justified its withholdings under exemptions 3 and 7(D).

Turning to the records that the IRS identified, the agency declined to produce numerous responsive records under FOIA Exemptions 3 and 7.  The parties agree that the IRS has turned over more than 12,000 pages of records in this case.  Def.'s SOF ¶ 3; Pl.'s SOF ¶ 3.  But the parties remain unable to agree about a small subset of remaining documents.  Defendant contends that "[o]nly 371 pages remain in dispute," and that "[s]pecifically, of these 371 pages 216 remain withheld in full and 155 pages are withheld in part based upon FOIA Exemptions 3 in connection

with 6301(a)[,] (e)(7), 7(D) and 5 with the deliberative process privilege." Def.'s Mem. at 3; *see* Def.'s SOF ¶ 99.  Plaintiff's cross-motion makes it clear that it is only challenging defendant's withholdings under FOIA Exemptions 3 in conjunction with 26 U.S.C. § 6103, and FOIA Exemption 7(D).  Pl.'s Cross-Mem. at 21.  So, in plaintiff's view, "only 236 pages, 190 of them withheld in full and 46 in part, remain in dispute."  *Id.* at 20, citing Pl.'s Cross-SOF ¶¶ 48–62.

### A.   FOIA Exemption 7(D) protects defendant's sources.

The IRS is withholding records in part and in full under FOIA Exemption 7(D).[11]  *See Vaughn* Index; Pl.'s Cross-SOF ¶ 51.[12]  Exemption 7 permits agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" would undermine one of six enumerated interests. 5 U.S.C. § 552(b)(7)(A)–(F).  In this case, the IRS relies on Exemption 7(D), which specifically permits agencies to withhold "records or information complied for law enforcement purposes" to the extent that the records or information "could reasonably be expected to disclose the identity of

---

11     The disputed records bear control numbers 012398, 012400, 012404, 012570, 012571, 012622, 012624, 012637.  3d Gulas Decl. ¶¶ 25–29.

12     Plaintiff contends that seven redacted pages were omitted from the agency's *Vaughn* Index. Pl.'s Cross-SOF ¶ 54.  The Third Gulas Declaration explains that five of those seven pages were properly redacted pursuant to Exemption 7(D) and Exemption 3 in connection with 28 U.S.C. § 6103(e)(7), and that the remaining two pages were properly redacted pursuant to Exemption 3 in connection with 28 U.S.C. § 6103(a).  3d Gulas Decl. ¶¶ 25, 30, 32.

a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished the information on a confidential basis."[13]   5 U.S.C. § 552(b)(7)(D).

1.   <u>The records were compiled for a law enforcement purpose.</u>

The agency must first meet its burden to prove that the records were collected for a "law enforcement purpose."   5 U.S.C. § 552(b)(7).   As the D.C. Circuit explained in *Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002):

> There are several overarching principles that the courts follow in assessing whether records or information satisfy the threshold requirement of § 552(b)(7).   First, "law enforcement purposes" under Exemption 7 includes both civil and criminal matters within its scope.   Second, FOIA makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both law enforcement and administrative functions.   Therefore, agencies like IRS, with both law enforcement and administrative functions . . . may seek to avoid disclosure of records or information pursuant to Exemption 7.   Finally, "courts can usually assume that government agencies act within the scope of the legislated authority."   However, courts apply a more deferential standard to a claim that information was compiled for law enforcement purposes when the claim is made by an agency whose primary function involves law enforcement.

*Id.* at 76–77, quoting *Pratt v. Webster*, 673 F.2d 408, 416, 418, 420 n.32.   The *Tax Analysts* court noted that the IRS is a "mixed-function" agency, with both a law enforcement and an administrative purpose, and it concluded that when dealing with a mixed-function agency, "a court

---

13      In full, Exemption 7(D) states that agencies may withhold

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source[.]

5 U.S.C. § 552(b)(7).

must scrutinize with some skepticism the particular purpose claimed for disputed documents redacted under FOIA Exemption 7." *Id.* at 77; quoting *Pratt*, 673 F.2d at 418.

"In assessing whether records are compiled for law enforcement purposes, this circuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Jefferson v. DOJ*, 284 F.3d 172, 177 (D.C. Cir. 2002), quoting *Aspin v. DOD*, 491 F.2d 24, 27 (D.C. Cir. 1973).

> In *Rural Housing Alliance v. Dep't of Agriculture*, 498 F.2d 73 (D.C. Cir. 1974), the court identified two types of investigatory files that government agencies compile: (1) files in connection with government oversight of the performance of duties by its employees, and (2) files in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions. *Id.* at 81. . . . Thus, if the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees. *Id.* Then, in [*Pratt*, 673 F.2d at 420–21], the court set forth a two-part test whereby the government can show that its records are law enforcement records: the investigatory activity that gave rise to the documents is "related to the enforcement of federal laws," and there is a rational nexus between the investigation at issue and the agency's law enforcement duties."

*Jefferson*, 284 F.3d at 177; *see also Rural Hous. Alliance*, 498 F.2d at 81, *Pratt*, 673 F.2d at 420–21.

The IRS contends that all of the records it withheld under Exemption 7 were compiled for a law enforcement purpose because (1) the records relate to an audit; and (2) the records pertain to informants. Def.'s Reply at 18–19. Plaintiff contends that the evidence supports its theory that defendant's audits were not for a law enforcement purpose, but were instead "to justify harassment of Sea Shepherd with a baseless audit as a diplomatic sop to Japan." Pl.'s Cross-Mem. at 24–25.

Because the records withheld relate to an audit of plaintiff to determine whether it qualifies for tax-exempt status, the records were compiled for a law enforcement purpose. Courts have

found that the Exempt Organizations function "performs a law enforcement function by enforcing the provisions of the federal tax code that relate to qualification for tax exempt status." *Church of Scientology Int'l v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993). The Ninth Circuit in *Church of Scientology* relied on a case from this jurisdiction, *Center for Nat'l Policy Review on Race & Urban Issues v. Weinberger*, 502 F.2d 370 (D.C. Cir. 1974), which predated *Rural Housing Alliance*, and which interpreted a precursor to the current version of exemption 7, but concluded that "[w]here an agency . . . has both voluntary compliance and formal determination functions . . . the pertinent files are 'compiled for law enforcement purposes.'" *Church of Scientology*, 995 F.2d at 919, quoting *Weinberger*, 502 F.2d at 373. The court concluded that the Exempt Organizations function, "like the agency in *Weinberger*, performs both voluntary compliance and formal determination functions. Moreover, the EO's role in determining eligibility for the governmental benefit of tax exempt status also 'has the salient characteristics of law enforcement.'" *Id.*, quoting *Weinberger*, 502 F.2d at 373.

So whether or not federal officials, as plaintiff repeatedly alleges, participated in a campaign to harass the plaintiff at the urging of the Japanese government, *see* Pl.'s Cross-Mem. at 24–25, the question is not whether this campaign existed, but rather, whether any records gathered

from the informants and any records created during the IRS's examination of the informants' complaints, were compiled for a law enforcement purpose.[14]

The Court found previously that "defendant has said little to address [plaintiff's] objections" that the material withheld was compiled for a law enforcement purpose. *Sea Shepherd*, 89 F. Supp. 3d at 95. Although defendant's declarations do not speak to the law enforcement purpose of the records, defendant has now come forward with sufficient information for the Court to conclude that the records were compiled to determine whether the informants' complaints merited a review of Sea Shepherd's tax exempt status, which is clearly "related to the enforcement of federal laws." *See Jefferson*, 284 F.3d at 177. So, the Court finds that "there is a rational nexus between the investigation" of plaintiff's tax-exempt status "and the agency's law enforcement duties." *See id.*[15]

> 2. The IRS has met its burden to show that the sources were promised confidentiality.

Because defendant has met its burden of establishing that the records were compiled for a law enforcement purpose, the Court must consider next whether the records "could reasonably be expected to disclose the identity of a confidential source." *See* 5 U.S.C. § 552(b)(7)(D). The agency invoking Exemption 7(D) bears the burden of "showing that the source is a confidential

---

14 Plaintiff presses the point in its pleadings: "This much is clear: (1) the Japanese government sought revocation of the Sea Shepherd's tax exempt status as a diplomatic bargaining chip in negotiations over whaling restrictions; (2) U.S. government employees, including IRS employees, communicated with one another and/or with the Japanese government regarding the possible revocation of Sea Shepherd's tax exemption; and (3) the IRS thereafter examined Sea Shepherd," and noting that "[w]hat remains uncertain . . . is whether the IRS acted on the basis of Japan's diplomatic demands rather than for tax-related reasons when it initiated the audit." *See* Pl.'s Cross-Mem. at 9–10. This is a FOIA action, and it does not provide an avenue for addressing the merits of plaintiff's allegations.

15 The Court need not address defendant's alternative argument, that the documents were compiled for a law enforcement purpose because they pertain to confidential sources. *See* Def.'s Reply at 18–19, citing *Robinson v. Att'y Gen.*, 534 F. Supp. 2d 72, 81 (D.D.C. 2008).

one." *Citizens for Responsibility & Ethics in Washington v. DOJ* (*CREW*), 746 F.3d 1082, 1101 (D.C. Cir. 2014), citing *DOJ v. Landano*, 508 U.S. 165, 172 (1997).  It is not enough for an agency to simply state that the sources in question provided information "on a confidential basis."  *Id.*, quoting *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011).   Rather, the agency "must either 'present probative evidence that the source did in fact receive an express grant of confidentiality,'" *id.*, quoting *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998), or else it must "point to more narrowly defined circumstances that . . . support the inference of confidentiality."  *Id.*, quoting *Roth*, 642 F.3d at 1184.  The key question "is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential."  *Landano*, 508 U.S. at 172.

In its March 31, 2015 opinion, the Court concluded that the agency's invocation of Exemption 7(D) was not justified:

> In this case, the IRS has entirely failed to carry its burden to show that its sources "did in fact receive an express grant of confidentiality," and it has also failed to articulate circumstances that would "support the inference of confidentiality."  *See CREW*, 746 F.3d at 1101 (citations and internal quotation marks omitted).  Defendant merely states that "the confidential sources[] requested anonymity," without anything more.  Indeed, the IRS does not even claim that these sources received an assurance of confidentiality at all, *see CREW*, 746 F.3d at 1101 – only that they "requested" it.  Under these circumstances, the Court cannot find that the IRS has carried its burden to establish that any of "the particular source[s] spoke with an understanding that the communication would remain confidential." *See Landano*, 508 U.S. at 172.  Thus, the IRS has not justified its withholdings under Exemption 7(D).

*Sea Shepherd*, 89 F. Supp. 3d at 98 (internal citations omitted).

The IRS states that it has received "multiple referrals" with respect to Sea Shepherd.  2d Franklin Decl. ¶ 6.  The first and third referrals came from the same source, while the second referral came from an another source.  *Id.* ¶¶ 6–9.  The source at the heart of the first and third referrals "specifically requested that its identity be withheld due to concerns about retribution for

providing information against [Sea Shepherd]." *Id.* ¶ 9.  The Court has also reviewed an *ex parte in camera* declaration authored by IRS attorney Michael Franklin, which identifies the source at issue, and details the government's communications with the source.  Based on the facts set forth in the *ex parte* declaration, the Court is satisfied that the government has met its burden to show that the source of the first and third referrals "spoke with an understanding that the communication would remain confidential," *Landano*, 508 U.S. at 172, and that the source received express assurances that its statements would be kept confidential.  *CREW*, 746 F.3d at 1101.  Therefore, the Court finds that Exemption 7(D) applies, and that the government can properly withhold from plaintiff documents regarding the first and third referrals.

The second referral "came as a referral through the EO referral system on a Form 13909, *Tax-Exempt Organization Complaint (Referral) Form*."  2d Franklin Decl. ¶ 7.  Franklin explains that the second source, which "alleged specific illegal acts performed by [Sea Shepherd]," "checked the box on the Form 13909 indicating that it feared retaliation if its identity was disclosed." *Id.* ¶¶ 7–8.  The government points out that, "[i]n light of the fact that some of the organization's alleged unlawful activity was assault on whaling fisherman, the IRS concluded that confidentiality was warranted for the [second source's identity] and the information provided because such information could identify the sources." *Id.* ¶ 10.

The government's affidavits did not identify any assurances of confidentiality that were made to the second source.  *See CREW*, 746 F.3d at 1101.  So the Court ordered the government to do the following two things:

> (1) provide a supplemental declaration that describes whether the confidential source described in paragraphs 3 and 4 of Franklin's *ex parte* declaration received an assurance of confidentiality . . . and if so, detail when, how, and by whom those assurances were conveyed, and (2) produce *ex parte* and *in camera* any documents that are being withheld on the basis of exemption 7(D) that relate to [the second source].

31

*See* Min. Order (Aug. 8, 2016); *Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462, 1469 (D.C. Cir. 1983)

("The receipt of *in camera* affidavits . . . when necessary, [is] 'part of a, trial judge's procedural

arsenal.'"), quoting *United States v. Southard*, 700 F.2d 1, 11 (1st Cir. 1983).[16]

After the Court reviewed the *in camera* materials, it ordered the Government to file a

redacted version of the declaration on the public docket.  *See* Min. Order (Aug. 25, 2016).  The

redacted declaration of Michael Franklin takes the position that the second source was promised

confidentiality both on an express and implied basis.  *See* Redacted Franklin Decl. ¶ 2.  Franklin

states that the agency provided express assurances of confidentiality in two ways:  (1) through its

policy statements in the Internal Revenue Manual, which instructs IRS employees that "[p]ersons

furnishing information on tax violations expect and deserve to have their identity kept secret.  All

employees must, therefore, handle such information in strict confidence."  *Id.* at ¶¶ 3–6, quoting

Internal   Revenue   Manual   § 10.4.1.5.9,   https://www.irs.gov/irm/part10/irm_10-004-001.

html#d0e236; and (2) on the IRS's website, where the agency "guarantees that it 'will protect the

identity of whistleblowers to the fullest extent permitted by law.'"  *Id.* ¶ 7, quoting Internal

Revenue Service, Confidentiality & Disclosure for Whistleblowers, https://www.irs.gov/uac/

confidentiality-and-disclosure-for-whistleblowers.

The IRS posits that by checking the box on Form 13909 ("I am concerned that I might face

retaliation or retribution if my identity is disclosed"), "the confidential sources accepted the

Service's stated public policy that the Service will keep the identities of the sources confidential."

Redacted Franklin Decl. ¶ 10.  For the same reasons, the IRS submits that the confidential sources

---

16     Defendant, despite the clear directive in the Court's order, took the opportunity to submit
*in camera* and *ex parte* all of the documents that it was seeking to withhold under Exemption 7(D),
which included far more than the nine pages "that relate to the [second source]." Min. Order (Aug.
8, 2016).  But despite the agency's over inclusiveness, the Court has identified the relevant pages.

received an implied assurance of confidentiality, "based on the Service's public assurances that it keeps confidential the identity of confidential informants," and based on the fact that the sources "specifically requested confidentiality." *Id.* ¶¶ 13–14.

To withstand summary judgment on its Exemption 7(D) claim on the basis of an express promise, the agency must "present 'probative evidence that the source did in fact receive an express grant of confidentiality." *CREW*, 746 F.3d at 1101, quoting *Campbell*, 164 F.3d at 34.   "Such evidence can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Campbell*, 164 F.3d at 34.   But "the question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *Landano*, 508 U.S. at 172 (emphasis in original).   "[I]t is not enough for the agency to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis." *Roth*, 642 F.3d at 1184.

Here, the IRS points solely to the existence of a policy that could be found on the agency's public website.  *See* Redacted Franklin Decl. ¶ 3 ("Express assurances were conveyed to the confidential source(s) of information in this case by the Service's expressly stated, publically available, and long-standing policy of protecting the identity of a confidential informant.")  This does not even rise to the level of contemporaneous records discussing the policy with the source or with similarly situated sources – the sum total of the evidence is that the agency policy was available to be discovered by a member of the public.   There is, therefore, no evidence tying express assurances to *this* source.  So, while the Court acknowledges the sensitive nature of the

information at issue, it finds that the government has not met its burden of showing that an express assurance of confidentiality was given to the second source. Indeed, the documents that were submitted *in camera* reveal that though the agency and the source exchanged letters on multiple occasions, the agency never expressly promised that it would treat the source's information as confidential.

But the Court does find that the source received an implied assurance of confidentiality. The D.C. Circuit has explained that four factors should be considered in assessing an implied assurance of confidentiality: "the character of the crime at issue, the source's relation to the crime, whether the source received payment, and whether the source has an ongoing relationship with the law enforcement agency and typically communicates with the agency only at locations and under conditions which assure the contact will not be noticed." *Roth*, 642 F.3d at 1184, quoting *Landano*, 508 U.S. at 179.

"The first factor, the character of the crime, contemplates that sources likely expect confidentiality when they report on serious or violent crimes, risking retaliation." *Labow v. DOJ*, ___ F.3d ___, 2016 WL 4150929, at *5 (D.C. Cir. Aug 5, 2016). While in this case, the agency's law enforcement function relates to tax offenses, the nature of the information provided related to other more physically threatening crimes. The second source "alleged specific illegal acts performed by [Sea Shepherd]," 2d Franklin Decl. ¶ 8, and indicated that the source "feared retaliation if its identity was disclosed," *see id.* ¶ 7, which is unsurprising, given Sea Shepherd's well-documented history of violence against its ideological opponents. *See Inst. of Cetacean Research*, 774 F.3d at 941 (describing Sea Shepherd's "annual campaign to prevent Cetacean from killing whales in the Southern Ocean," by "throwing smoke bombs and glass containers of acid at the Plaintiffs' vessels; dragging metal-reinforced ropes in the water to damage the vessels'

propellers and rudders; throwing safety flares with metal hooks and nets hung from the Plaintiffs' vessels in the hope that they will set fire to the vessels, and shining high-powered lasers at the Plaintiffs' vessels to annoy the crew").

The agency concluded that confidentiality was warranted "[i]n light of the fact that some of the organization's alleged unlawful activity was assault on whaling fisherman."  2d Franklin Decl. ¶ 10.  An agency's assessment of risks faced by informants need not be detailed.  In *Labow*, the D.C. Circuit upheld an FBI declaration that argued that disclosure of the identity of informants "could have disastrous consequences because disclosure could subject these third parties, as well as their families, to embarrassment, humiliation, and/or physical or mental harm."  2016 WL 4150929, at *6.  The D.C. Circuit relied on a similarly "broad" declaration in *Hodge v. FBI*, 703 F.3d 575 (D.C. Cir. 2013), in which the Court upheld an agency that "stated that disclosure 'could have disastrous consequences' and 'subject [informants] to violent reprisals.'"  *Id.*, quoting *Hodge*, 703 F.3d at 581.  While the agency's assessment of the risk is conclusory, it is no more conclusory than the assessments that have been upheld in *Labow* and *Hodge*.  So the Court finds that the first *Roth* factor favors confidentiality.

"The second *Roth* factor calls for considering the source's relationship to the crime, because sources divulging nonpublic, identifying information are more 'vulnerable to retaliation.'" *Labow*, 20166 WL 4150929, at *6, quoting *Mays v. DEA*, 234 F.3d 1324, 1330 (D.C. Cir. 2000). The agency's declarations do not discuss the issue.  But based on the Court's *in camera* review of the documents at issue, the Court concludes that the second source revealed nonpublic identifying information that could make the source more vulnerable to retaliation if the documents were disclosed.

With respect to the third *Roth* factor – whether the source receive payment – the IRS has indicated in its *in camera* and *ex parte* submissions that though the second source was eligible to receive payment, the source did not seek an award.  The fact that a source did not seek an award "weighs against a finding of confidentiality, but it is not itself dispositive."  *Labow*, 2016 WL 4150929, at *6.

"Finally, the fourth *Roth* factor concerns the duration of the source's relationship with law enforcement and the manner of communication.  Consistent and secretive communications indicate a source's expectation of confidentiality."  *Id.*  The *ex parte* materials reveal that the second source communicated with the IRS on three occasions over the course of about a year, and that it repeated its fears of reprisal in communications that followed the initial Form 13909.  So this factor weighs in favor of confidentiality as well.

The Court concludes that the source provided ongoing information about serious crimes, and that its repeated expressions of a need for confidentiality were made in the context of the agency's publicly announced policies.  Under these circumstances, the IRS's reliance on Exemption 7(D) is justified.  *See id.*; *Hodge*, 703 F.3d at 581–82.

### B.    FOIA Exemption 3 permits the agency to withhold the records that the informants provided.

Defendant also asserts that Exemption 3 justifies the withholding of information generated as a result of the complaints from the informants.  Exemption 3 protects from disclosure any records that are "specifically exempted from disclosure by statute . . . if that statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  To determine whether a statute "specifically exempt[s]" records "from disclosure," the Court must consider two questions:  "Does the statute meet

Exemption 3's requirements?  And does the information that was withheld fall within that statute's coverage?" *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 165 (D.C. Cir. 2012).

The answer to the first question is incontrovertible.  Here, the IRS withheld several records, in part and in full, under Exemption 3, and it points to 26 U.S.C. § 6103(e)(7) as the statute in question. [17]  "That [section] 6103 is the sort of nondisclosure statute contemplated by FOIA exemption 3 is beyond dispute." *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997).

So the Court must consider whether the information that the IRS seeks to protect falls within the ambit of section 6103(e)(7).  Section 6103(e)(7) states that "[r]eturn information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines that such disclosure would not seriously impair Federal tax administration." 26 U.S.C. § 6103(e)(7).[18]  The Court reviews the Secretary's determination *de novo*, and the IRS bears the burden to justify nondisclosure. *See Church of Scientology*, 792 F.2d at 150.

---

17    The records in dispute include all of the records in dispute under Exemption 7(D), plus the records with the following control numbers:  012396, 012401, 012569, and 012613–012614. *Compare* 3d Gulas Decl. 25–29 *with id.* ¶ 32.  The Court notes that defendant "continues to assert FOIA exemptions 3 in connection with 6103(e)(7), and 7(D) with respect to" the document with control number 012590–012613, but that document does not appear on the agency's *Vaughn* Index. *See* Pl.'s Cross-Mem. at 20 (noting that, because of this deficiency, the agency has "effectively conceded" that those pages should be immediately unredacted and released).  The agency's response seems to miss a crucial word or phrase when it argues that "[b]ecause [Sea Shepherd] has conceded that pages bearing control numbers 012590–012612, this Court should determine that the Service has properly withheld those records." Def.'s Reply at 17.  Given the lack of clarity surrounding this document, the Court instructs the agency to be guided by the Court's opinion and release these two pages document if it is appropriate to do so.

18    Tax administration is defined, in relevant part, as:  "the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party." 26 U.S.C. § 6103(b)(4)(A)(i).

Congress provided a "deliberately sweeping" definition of "return information" in section 6103, *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1135–36 (D.C. Cir. 2001), in order to effectuate the statute's "core purpose" of "protecting taxpayer privacy." *Tax Analysts*, 117 F.3d at 615. Return information is defined as:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . .

26 U.S.C. § 6103(b)(2)(A). Both sides seem to assume that the withheld information is "return information," but neither side presented any legal argument on the question. *See* Def.'s Mem. at 23–24; Pl.'s Cross-Mem. at 29–32; Def.'s Reply at 21; *Vaughn* Index at 1–8 (arguing that "[d]isclosing this material would seriously impair Federal tax administration," but not arguing that the information is return information).

"[T]he identities of third parties who request[] audits or investigations of [tax-exempt organizations]," and "any other material or information included in those third-party requests," constitute "return information" under section 6103. *Landmark Legal Found.*, 267 F.3d at 1135, 1138; *see also id.* at 1137 ("[T]he term 'data' is correctly understood to cover the identity of third parties who urge the IRS to withdraw or reexamine an entity's tax-exempt status."). So, the information that the IRS seeks to withhold in this case – the identities of the confidential sources and the information that the sources provided – is return information.

Therefore, the question to be resolved is: would the release of the return information seriously impair federal tax administration? In its first opinion, the Court found that:

> [D]efendant has failed to carry its burden to show that its withholdings under Exemption 3 and section 6103(e)(7) were justified.   The only explanation defendant has given in its pleadings for all of its withholdings under section 6103(e)(7) is that "Senior Counsel A.M. Gulas has been delegated the authority to determine whether the release of return information would seriously impair the federal tax administration, and she made that determination as to the material designated as withheld in the *Vaughn* indexes."   Defendant also claims that "[r]elease of the material designated as withheld in the *Vaughn* indexes would impair federal tax administration by revealing the scope, direction and nature of the Service's investigation into Sea Shepherd . . . and by identifying confidential informants."   In addition, in the *Vaughn* Indexes, defendant repeatedly contends that the information it has withheld "would seriously impair Federal tax administration because it would result in a chilling effect on confidential sources coming forward, thereby hampering future investigations."

> But defendant's investigation of plaintiff is now closed, and, as the Court has already found, defendant has not established that its informants "did in fact receive an express grant of confidentiality" or that other circumstances exist that would "support the inference of confidentiality."   *See CREW*, 746 F.3d at 1101.   So neither the status of the investigation nor the concerns about revealing sources justifies defendant's reliance on section 6103(e)(7) here.

*Sea Shepherd*, 89 F. Supp. 3d at 100 (internal citations omitted).

On remand, Gulas has averred that:

> When a member of the public refers a taxpayer to the IRS, even an exempt organization, that member of the public is seeking to have the IRS investigate whether the taxpayer is violating the Internal Revenue Code. Exempt organizations, as a rule, are exempt from taxation on the income (donations) they receive from donors.   Based on the records located, the records reflect that sources wrote to the IRS and described the potentially illegal activities engaged in by the organization.

> The IRS relies on sources to report potential non-compliance, as reflected by the EO Referral Form 13909.   If it becomes known that the IRS does not protect the identity and confidentiality of informants, this will have a chilling effect on other potential witnesses or informants coming forward.

3d Gulas Decl. ¶¶ 33–34.   Franklin's declaration adds that "[d]isclosing this material would seriously impair Federal tax administration because it would result in a chilling effect on confidential sources coming forward, thereby hampering future investigations.  The chilling effect

would be especially severe where, as in this case, the sources have requested confidentiality."  2d Franklin Decl. ¶ 11.

In these declarations, the IRS has repeated the arguments that the Court considered before, and added two more arguments:  (1) "When a member of the public refers a taxpayer to the IRS, even an exempt organization, that member of the public is seeking to have the IRS investigate whether the taxpayer is violating the Internal Revenue Code," 3d Gulas Decl. ¶ 33; and (2) that "[t]he IRS relies on sources to report potential non-compliance."  *Id.* ¶ 34.

But there has been a change:  the Court has now found that the sources received either an express or implied assurance of confidentiality, and that fact changes the analysis underlying the first opinion.  In addition, the Court has had an opportunity to review the documents that the IRS seeks to withhold *in camera*.  Its review reveals that the return information contained in the documents is intertwined with information that may reveal the identity of the sources.  Some documents bear upon whether a source had personal knowledge of Sea Shepherd's violent acts, and other documents explain why Sea Shepherd would be able to identify the sources even if the non-identifying information were made available.  The Court agrees with the IRS, then, that it would have a serious chilling effect on the use of confidential informants if that information were to be revealed.  And that chilling effect would "seriously impair federal tax administration."

26 U.S.C. § 6103(e)(7).  So the Court concludes that the agency's reliance on Exemption 3 in connection with 26 U.S.C. § 6103(e)(7) is justified.[19]

### C.   The search of the Whistleblower Office was adequate, but, based on the unique circumstances presented in this case, defendant's *Glomar* response is not justified.

#### 1.   The search of the Whistleblower Office of was adequate.

Sea Shepherd's original request, dated May 13, 2013, sought "any and all documents related to the examination of Sea Shepherd commenced by the Internal Revenue Service on or about January 4, 2013, and any and all documents relating to any complaint lodged with the Internal Revenue Service expressing concerns regarding Sea Shepherd's activities or qualifications for tax-exempt status after January 1, 2006."  Ex. A to Compl. at 1–2.  The request indicated Sea Shepherd's belief that the case agent, Peter Huang, may have relevant documents, as well as "the National and Area Chief Counsel Offices of the Tax-Exempt and Government Entities function of the IRS, as well as the Director of Exempt Organizations Exams office in Dallas, Texas, and EO Rulings and Agreements in the [TEGE] National office."  *Id.* at 1.  As the Court noted in its previous opinion, "plaintiff did not mention [the Whistleblower Office] in its FOIA request, and the IRS was 'not obliged to look beyond the four corners of the request for leads to the location of responsive documents.'"  *Sea Shepherd*, 89 F. Supp. 3d at 92 n.3, quoting *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996); *see also Mobley*, 806 F.3d at 582.  But because the agency did

---

19   Plaintiff contends that defendant has withheld the record with control number 012590 in full, even though the Court's previous opinion found that the IRS had not justified its withholdings for that document.  Pl.'s Cross-SOF ¶ 61, citing *Sea Shepherd*, 89 F. Supp. 3d at 96, 98, 101.  The IRS, somewhat cryptically, admits that "as of the date that [Sea Shepherd] filed its Statement of Undisputed Material Facts (Oct. 15, 2015), the Service has not provided additional justification for its withholding" of that document.  Def.'s Resp. to Pl.'s Cross-SOF [Dkt. # 42-1] ¶ 62.  The Court has reviewed that record *in camera*, and it appears to be a duplicate of other records that are subject to withholding under Exemptions 3 and 7(D).

search the Whistleblower office, it must prove that its search was adequate, and it must justify its withholdings.

In April 2015, Kevin Gillin, Special Counsel in the Office of Division Counsel, Small Business & Self-Employed, contacted Cindy Stuart, a Management Analyst and Executive Assistant in the Whistleblower Office, and asked her to search for "any claims submitted with respect to Sea Shepherd Conservation Society." Def.'s SOF ¶¶ 85–86; Pl.'s SOF ¶¶ 85–86. Stuart searched E-trak – which "is fully searchable by both the name of the whistleblower as well as the taxpayers subject to a whistleblower claim" – for records related to Sea Shepherd using its taxpayer identification number and taxpayer name. Def.'s SOF ¶¶ 87–88; Pl.'s SOF ¶¶ 87–88. The IRS has refused to confirm or deny whether the search revealed the existence of any records. Stuart Decl. ¶ 5.

Because "all whistleblower claims are controlled on . . . E-trak," and E-trak "is fully searchable by both the name of the whistleblower as well as the taxpayers subject to a whistleblower claim," the Court finds that there was a rationale behind Stuart's search parameters. Stuart Decl. ¶ 3. Stuart avers that she searched "all locations likely to contain responsive records," and that the Whistleblower Office "does not contain any other records system" likely to produce responsive records. *Id.* ¶ 9. The Court has also reviewed the declarations submitted *in camera* that detail the results search of the Whistleblower Office. The Court concludes that the agency's declarations detail a "good faith effort to conduct a search . . . using methods . . . reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.

2.     The agency has not justified its *Glomar* response.

While with respect to the other offices within the IRS, the defendant provided a substantive response – releasing some records while withholding others – in the case of the Whistleblower

Office, defendant declined to "confirm or deny the existence of whistleblower records" at all. Def.'s SOF ¶ 89.

The IRS explains that it issued a *Glomar*[20] response in this instance because the whistleblower program is an important and lucrative source of information, Stuart Decl. ¶ 7, and that "loss of confidence in the IRS's ability to protect whistleblowers would interfere with the Service's ability to fully and properly investigate taxpayers' compliance with the internal revenue laws, would impair the Service's ability to determine the correct application of Federal tax laws, and would, therefore, seriously impair Federal tax administration." *Id.* ¶ 8.  Further, the analyst from the Whistleblower Office avers that a *Glomar* response is required even if no responsive records were uncovered "because if the IRS were to provide a 'no records' response when there are no records, and *Glomar* response when there are records, the public will soon learn that a *Glomar* response is synonymous with a confirmation that records exist." *Id.* ¶ 6.

Plaintiff contends that defendant's *Glomar* response is "unprecedented."  Pl.'s Cross-Mem. at 16, 19.  It urges the Court to "compel the IRS to detail the results of its search of the Whistleblower Office . . . on the public record." *Id.* at 19.

Neither party has pointed the Court to any other case in which a court has sustained or rejected a *Glomar* response to a FOIA request directed towards the IRS Whistleblower Office. The *Glomar* doctrine applies when "confirming or denying the existence of records would itself 'cause harm cognizable under a FOIA exception.'" *Roth*, 642 F.3d at 1178, quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007); *see also Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir.

---

[20]     The *Glomar* doctrine takes its name from the CIA's refusal to confirm or deny the existence of records about "the *Hughes Glomar Explorer*, a ship used in a classified [CIA] project 'to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts.'" *Roth*, 642 F.3d at 1171, quoting *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981).

1982).  In other words, the fact of the existence or nonexistence of records itself must be subject to a FOIA exception.  *Wolf*, 473 F.3d at 374.

When addressing an agency's *Glomar* response, courts must accord "substantial weight" to agency determinations.  *Gardels*, 689 F.2d at 1104.  Summary judgment is therefore appropriate when an agency's affidavits describe the justifications for nondisclosure with "reasonably specific detail" and "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Wolf*, 473 F.3d at 374, quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Id.* at 374–75; *see also Gardels*, 689 F.2d at 1105; *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).  And "to the extent the circumstances justify a *Glomar* response, the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents,"  *PETA v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014), but an agency may conduct a search "on its own volition" prior to issuing the *Glomar* response.  *See EPIC v. NSA*, 678 F.3d 926, 934 (D.C. Cir. 2012)

It may be true, as the IRS argues, that any responsive records from the Whistleblower Office – should they exist – could be withheld under Exemption 3 and 26 U.S.C. § 6103(e)(7).  Def.'s Reply at 13.  But the agency has done little to explain with any specificity why the disclosure of the *fact of the existence or non-existence* of any records – as opposed to the records themselves – would cause harm to the interests protected by the FOIA exemptions cited, particularly given the fact that in this case, in connection with this particular taxpayer, the defendant has already publicly acknowledged that whistleblowers or confidential informants provided information to other components of the agency.  *See e.g.*, 2d Franklin Decl. ¶¶ 6–9 (IRS received "multiple referrals" from confidential informants to the Exempt Organizations component).

44

Defendant seeks to treat the search of the Whistleblower Office differently, and shield the results of that search from disclosure by arguing that the Whistleblower program is "much broader" than the Exempt Organizations function, and that "the erosion of confidence in potential whistleblowers to the Service's ability to keep confidential a whistleblower's identity has serious consequences to the Service's future ability to collect information regarding non-compliance with Federal tax law." Def.'s Reply at 15–16. This argument is beside the point since the disclosure of any whistleblower's identity is not at issue at this point.

The agency also states that revealing whether whistleblower records exist would cause a "loss of confidence in the IRS's ability to protect whistleblowers and would interfere with the Service's ability to fully and properly investigate taxpayers' compliance" with the tax laws. Stuart Decl. ¶ 8. This has some force as a general proposition. But even if one were to defer to the agency's judgment on this issue in the ordinary situation, the Court concludes that the defendant has not justified its *Glomar* response under the unique circumstances of this case, where the fact of the existence of whistleblowers and informants has already been made public by the defendant in response to a FOIA request lodged by the taxpayer itself. This is the sort of "contrary evidence" that weakens the plausibility of the agency's claims of impending harm. *See Wolf*, 473 F.3d at 374–75. Notwithstanding the particular importance of the Whistleblower Office to the administration of the tax laws in general, the defendant has failed to specify how revealing this one additional piece of information – whether whistleblower records related to the plaintiff also exist in the Whistleblower Office – would chill other informants or affect the agency's ability to do its work any more than its own revelations already have.

This opinion is not meant to and does not establish a general principle that the IRS may never issue a *Glomar* response for records from its Whistleblower Office. Rather, the Court's

ruling turns on the unique circumstances presented in this case, in which the fact of the existence of whistleblower records within the agency has already been made public.   So the IRS must reveal to Sea Shepherd whether its search of the Whistleblower Office yielded any records, and if so, it must then produce the records or identify the legal basis for withholding them.

## CONCLUSION

The Court finds that the IRS adequately explained its searches of:  the National and Area Chief Counsel Offices of TEGE; the Exempt Organizations Rulings and Agreements function; the Communications & Liaison Office, and the Whistleblower Office, and it will grant defendant's motion for summary judgment in part as to the adequacy of those searches.  But the IRS has failed to adequately explain the renewed search of the Exempt Organizations Examinations function.  So the Court will grant plaintiff's motion for summary judgment in part, and remand this matter to the agency to renew its search of that component.

The Court also finds that defendant has fully justified its withholdings under exemptions 3 and 7(D).   The Court will grant summary judgment to the agency on the adequacy of those withholdings.  But the Court finds that, based on the unique circumstances of this case, defendant's *Glomar* response with respect to the Whistleblower Office was not justified.   The agency must reveal whether its search of the Whistleblower Office yielded any responsive records, and then either produce them or justify their withholding.

So the agency must conduct a further search for responsive records, and it must release any reasonably segregable non-exempt material to Sea Shepherd consistent with the FOIA statute and this opinion.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 20, 2016